JURCISIN ET AL., APPELLANTS, *v.* CUYAHOGA COUNTY BOARD OF
ELECTIONS ET AL., APPELLEES.

[Cite as Jurcisin *v.* Cuyahoga Cty. Bd. of Elections (1988), 35 Ohio St. 3d 137.]

(No. 86-1727—Decided February 10, 1988.)

*Chattman, Garfield, Friedlander & Paul, Gerald B. Chattman, Douglas J. Paul* and *Richard G. Ross,* for appellants Paul Jurcisin and Cleveland Police Patrolmen's Association.

*Gold, Rotatori, Schwartz & Gibbons Co., L.P.A., Susan L. Gragel* and *Kent R. Markus,* for appellants Joseph Musarra and Fraternal Order of Police.

*Marilyn G. Zack,* law director, *Nick Tomino, Kathleen A. Martin* and *Barbara R. Marburger,* for appellee city of Cleveland.

*John T. Corrigan,* prosecuting attorney, *Patrick J. Murphy* and *Michael P. Butler,* for appellee Cuyahoga County Board of Elections.

*James R. Willis,* for appellee Cleveland City Council.

*Stephen W. Gard,* urging affirmance for *amicus curiae,* ACLU of Cleveland Foundation, Inc.

*Yvonne C. Billingsley, Theodore E. Meckler* and *Roy M. Kaufman,* urging affirmance for *amicus curiae,* Coalition for a Civilian Review Board.

MOYER, C.J. Appellants challenge the amendment to the home-rule charter of the city of Cleveland on three grounds:

1. That the ballot title and summary identifying the charter amendment question for the voters on the November 6, 1984 question and issues ballot did not properly describe the substance of the proposed amendment.

2. If implemented, the amendment would conflict with and therefore breach the collective bargaining agreements between the city and the unions under R.C. 4117.10(A).

3. The council had not followed lawful procedures in passing Ordinance No. 1397-84 as an emergency measure.

Lastly, appellants argue that the trial court properly issued a declaratory judgment and injunction regarding the proposed charter amendment before it was certified as passed or otherwise implemented.

For the reasons discussed below, we affirm the decision of the court of appeals.

I

Appellants argue that the ballot summary describing the effect of the proposed charter amendment was ambiguous and incomplete. The ballot title and summary of the proposed charter amendment was regulated by the city charter and state statutes. Section 200 of the Charter of the city of Cleveland provides in pertinent part:

"* * * Proposed amendments to this Charter may be submitted to the electors by ballot title, which shall be clear, concise statements, without argument, descriptive of the substance of such proposed amendments. * * *"

R.C. 3505.06 provides in part:

"The questions and issues ballot need not contain the full text of the proposal to be voted upon. A condensed text that will properly describe the question, issue, or an amendment proposed by other than the general assembly shall be used as prepared and certified by the secretary of state for state-wide questions or issues or by the board for local questions or issues. * * *"

R.C. 3519.21 states:

"The order in which all propositions, issues, or questions, including proposed laws and constitutional amendments, shall appear on the ballot and the ballot title of all such propositions, issues, or questions shall be determined by the secretary of state in case of propositions to be voted upon in a district larger than a county, and by

the board of elections in a county in the case of a proposition to be voted upon in a county or a political subdivision thereof. In preparing such a ballot title the secretary of state or the board shall give a true and impartial statement of the measures in such language that the ballot title shall not be likely to create prejudice for or against the measure. The person or committee promoting such measure may submit to the secretary of state or the board a suggested ballot title, which shall be given full consideration by the secretary of state or board in determining the ballot title. * * *"

In *State, ex rel. Bailey,* v. *Celebrezze* (1981), 67 Ohio St. 2d 516, 519, 21 O.O. 3d 463, 464-465, 426 N.E. 2d 493, 495, the court set forth the following three-step test for evaluating ballot language:

"First, a voter has the right to know what it is he is being asked to vote upon. *State, ex rel. Burton,* v. *Greater Portsmouth Growth Corp.* (1966), 7 Ohio St. 2d 34, 37. Second, use of language which is 'in the nature of a persuasive argument in favor of or against the issue * * *' is prohibited. *Beck* v. *Cincinnati* (1955), 162 Ohio St. 473, 475. And, third, 'the determinative issue * * * is whether the cumulative effect of these technical defects [in ballot language] is harmless or fatal to the validity of the ballot.' *State, ex rel. Williams,* v. *Brown* (1977), 52 Ohio St. 2d 13, 19; *State, ex rel. Commrs. of the Sinking Fund,* v. *Brown* (1957), 167 Ohio St. 71."

Application of this test to the text of the ballot title and summary in the present case discloses no infirmities. The language provides a clear synopsis of the proposed charter amendment. See footnote 1. The language is not inaccurate, incorrect, or illegal. It is not confusing, misleading, or argumentative. It is not persuasive in nature, and

therefore not contrary to the above test. See *Beck* v. *Cincinnati* (1955), 162 Ohio St. 473, 55 O.O. 373, 124 N.E. 2d 120.

Appellants contend that the summary omitted some of the significant changes found in the proposed amendment. Specifically, appellants maintain, and the trial court found, that the police review board "is more than an initiating body." Appellants point to the board's powers to suspend police officers and employees without review by the safety director or mayor. Therefore, they contend that rather than being just an initiating body, the board is also the ultimate disciplinary body.

Appellants further contend that the summary is misleading in that it suggests that the proposed amendment would expand the appellate rights of city employees when, in fact, the amendment severely restricts those rights. Finally, appellants argue that the summary language is misleading because it fails to apprise voters that passage of the proposed amendment would require the appropriation of substantial funds from the city's budget for the operation of the review board.

We are unpersuaded by these contentions. The summary expressly and fairly represents the meaning and substance of the proposed amendment. *Reutener* v. *Cleveland* (1923), 107 Ohio St. 117, 131, 141 N.E. 27, 31. The summary generally outlines the changes to be made in the city charter and provides a brief digest of the powers of the review board. From this language, it is clear that the board is more than just an initiating body. The board, through the Office of Professional Standards, would have investigative powers. The summary discloses this effect of the amendment. Further, the summary does not suggest any expansion of the appellate rights of city employees.

Given the fact that under the existing procedures police officers do not have the right to appeal suspensions of ten days or less, the amendment and summary are merely a clarification of existing disciplinary procedures and a review of the proposed procedures. Omission of a statement that the amendment would require appropriations from the city's budget is not fatal to the language of the summary because the amendment itself does not make any reference to appropriations. Inclusion of such language would be in the nature of a persuasive argument in favor of or against the issue. *State, ex rel. Bailey, supra,* at 519, 21 O.O. 3d at 465, 426 N.E. 2d at 495; *Beck, supra,* at 474-475, 55 O.O. at 374, 124 N.E. 2d at 121-122.

Additional language may have made the summary more complete as to some aspects of the charter amendment, but would also have defeated the purpose of the summary in providing a clear, concise description of the amendment to the voters. As this court said in *State, ex rel. Commrs. of Sinking Fund,* v. *Brown* (1957), 167 Ohio St. 71, 74, 4 O.O. 2d 35, 36, 146 N.E. 2d 287, 289:

"* * * Of course a greater degree of accuracy of expression would have resulted if the ballot had contained the lengthy involved technical terms of the entire amendment, but this is the very difficulty sought to be avoided by the statute which expressly states that the 'ballot need not contain the full text of the proposal' and that a 'condensed text' may be substituted therefor."

Therefore, we hold that the ballot title and summary properly described the substance of the proposed charter amendment under the standards found in the city charter, state statutes, and decisions of this court.

## II

Appellants argue that the griev-

ance procedures contained in the collective bargaining agreements are in conflict with the police review board process. Under R.C. 4117.10(A),[2] where a law conflicts with a wage, hour, or term and condition of employment provision (such as grievance procedures) found in a collective bargaining agreement entered into pursuant to R.C. Chapter 4117, the collective bargaining agreement prevails over the conflicting provisions of the law. As defined in the collective bargaining agreement between the city and the appellant CPPA, the grievance procedures govern "any dispute arising out of or connected with the subject matter of this Contract or the interpretation, application or enforcement of any of its terms." The grievance procedures are specified as "the exclusive method of reviewing and settling disputes" between the city and the union. Appellants argue that questions of discipline fall under the grievance procedure outlined in the collective bargaining agreement. The city's collective bargaining agreement with the appellant FOP is nearly identical to its contract with the appellant CPPA.

Both contracts contain an expansive management rights clause. This clause gives the city the right to:

"(a) Determine matters of inherent managerial policy which include, but are not limited to, areas of discretion or policy such as the functions and programs of the Employer, standards of services, its overall budget, utilization of technology, and organizational structure;

"(b) Direct, supervise, evaluate or hire employees;

"* * *

"(e) Suspend, discipline, demote or discharge for just cause, layoff [sic], transfer, assign, schedule, promote, or retain employees."

These powers are retained by the city in the absence of an agreement otherwise. R.C. 4117.08(C).[3]

---

[2] R.C. 4117.10(A) provides, in pertinent part:

"An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * [W]here an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. * * * Chapter 4117. of the Revised Code prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified in Chapter 4117. * * * or as otherwise specified by the general assembly. * * *"

[3] The text of R.C. 4117.08(C) is as follows:

"Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of the Revised Code impairs the right and responsibility of each public employer to:

"(1) Determine matters of inherent managerial policy which include, but are not limited to areas of discretion or policy such as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, and organizational structure;

"(2) Direct, supervise, evaluate, or hire employees;

"(3) Maintain and improve the efficiency and effectiveness of governmental operations;

"(4) Determine the overall methods, process, means, or personnel by which governmental operations are to be conducted;

"(5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees;

The contracts also contain the following provisions:

"Except as expressly limited by the terms of this Contract, any and all rights concerned with the management of the Division of Police are the exclusive and sole responsibility of the Employer.

"The Employer reserves the right to implement new or revise existing policies which do not conflict with the express terms of this Contract."

In *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50, 53, 26 OBR 42, 45, 496 N.E. 2d 983, 986, this court recognized the broad powers of municipalities to manage local police departments:

"Police command officers must, of course, still carry out the legitimate orders of their superiors and are subject to the traditional avenues of discipline if they do not. Lawful promotions may still be controlled by the city. The responsibility and authority to control all police department employees therefore remains squarely with the city." See, also, *Local 4501* v. *Ohio State Univ.* (1986), 24 Ohio St. 3d 191, 24 OBR 420, 494 N.E. 2d 1082, wherein this court held that, although a proper subject of collective bargaining in the absence of limiting language, a public employer could enter into independent service contracts rather than filling vacant civil service positions with employees who would perform the same work as the independent contractors.

The proposed charter amendment would not affect the grievance procedures found in the collective bargaining agreements. Members of the appellant unions would still be protected by the procedural rights designated in the agreements. In fact, the grievance procedures provided for in the collective bargaining agreement do not become operative until after an officer has been disciplined by the Director of Public Safety. The police review board, pursuant to the proposed charter amendment, would perform its responsibilities prior to any action by the Director of Public Safety. Therefore, a police officer who would be disciplined by the Director of Public Safety as a result of a recommendation from the police review board would have the same right to file a grievance to appeal such a disciplinary action as he or she would have if the discipline had not been recommended by a police review board.

While appellants' concern with having another source from which complaints may be submitted to the Director of Public Safety is understandable, that concern is not sufficient, in a legal context, to deny the citizens of Cleveland their right to vote for the creation of a police review board.

This is not the case of an attempt

---

"(6) Determine the adequacy of the work force;

"(7) Determine the overall mission of the employer as a unit of government;

"(8) Effectively manage the work force;

"(9) Take actions to carry out the mission of the public employer as a governmental unit.

"The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement. A public employee or exclusive representative may raise a legitimate complaint or file a grievance based on the collective bargaining agreement."

As is evident, the management rights clause of appellants' collective bargaining agreements with the city contain language almost identical to R.C. 4117.08(C).

by a public employer "to disregard the terms of their collective bargaining agreements whenever they find it convenient to do so." *Mahoning Cty. Bd. of Mental Retardation* v. *Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St. 3d 80, 84, 22 OBR 95, 99, 488 N.E. 2d 872, 876. Rather, this case involves the proper exercise of management powers created by the city charter and recognized in the collective bargaining agreements. The agreements expressly recognize that the city retains exclusive and sole responsibility for the organizational structure of the police department, the supervision and direction of employees of the department, and the discipline of members of the department.

We agree with the observation that a public review board that serves as a forum for allegations regarding police misconduct in the performance of their duties provides a procedure for those who are not represented at the bargaining table to raise issues with respect to police conduct. Collective bargaining does not necessarily provide an appropriate process for the full consideration of the issues raised in a complaint by a citizen against a police officer. Summers, Public Employee Bargaining: A Political Perspective (1974), 83 Yale L. J. 1156, 1197. See, also, Jenkins, Collective Bargaining for Public Employees: An Overview of Illinois' New Act (1983), S. Ill. U. L. J. 483, 506-507. Indeed, the issues to be resolved in a grievance proceeding initiated by a police officer would usually be different from the issues raised in a complaint filed with a public review board.

We hold that, where a proposed charter amendment that would establish a police review board to investigate charges of police misconduct and recommend disciplinary action upon a finding of misconduct does not conflict with provisions of a collective bargaining agreement concerning wages, hours, and other conditions of employment, R.C. 4117.10(A), which gives collective bargaining agreements precedence over conflicting laws, does not apply.

For the reasons stated, we conclude that the proposed charter amendment does not conflict with the collective bargaining agreements entered into by the appellant unions and the city. Having so concluded, we need not consider the constitutional issues raised by appellants.

### III

Appellants' next contention is that the council did not follow lawful procedures in passing the ordinance as an emergency measure. Determining emergency and necessity for immediate operation is a legislative function. In *State, ex rel. Fostoria,* v. *King* (1950), 154 Ohio St. 213, 43 O.O. 1, 94 N.E. 2d 697, paragraph four of the syllabus, this court held:

"The duty and responsibility of determining the emergency and the necessity that a measure go into immediate effect and of giving reasons for such necessity are placed by Section 4227-3, General Code [now R.C. 731.30] in the council or other body corresponding to the council of a municipality. Such a determination by a municipal council and the soundness of the reasons stated by such council for such necessity are not subject to review by the courts." See, also, *State, ex rel. Taxpayers League of North Ridgeville,* v. *Noll* (1984), 11 Ohio St. 3d 190, 192, 11 OBR 502, 504, 464 N.E. 2d 1007, 1009; *State, ex rel. Davis Investment Co.,* v. *Columbus* (1963), 175 Ohio St. 337, 342, 25 O.O. 2d 244, 246, 194 N.E. 2d 859, 863; *Youngstown* v. *Aiello* (1951), 156 Ohio St. 32, 36, 45 O.O. 45, 47, 100 N.E. 2d 62, 65.

In the present case, the preamble to Ordinance No. 1397-84 clearly stated the reason the ordinance was to go into effect immediately: the imminence of the next election date. The ordinance had to become effective immediately to be certified to the election authorities for placement on the November 6 ballot. Delay would have resulted in a prolongation of the perceived failure of the city to address allegations of police misconduct. In the council's estimation, passage of the ordinance as an emergency measure was necessary to promptly establish the police review board.

Appellants have not been denied a remedy.

"If there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters [including appellants] have an opportunity to take appropriate action in the subsequent election of their representatives. However, the existence of an emergency or the soundness of such reasons is subject to review only by the voters at such a subsequent election of their representatives. They are not subject to review by the courts." *State, ex rel. Fostoria, supra,* at 221, 43 O.O. at 4-5, 94 N.E. 2d at 701.

Accordingly, we hold that the ordinance was properly enacted as an emergency measure.

## IV

The appellants' final contention is that the trial court properly declared both the results of the election and the proposed charter amendment null and void, and enjoined the implementation of the amendment. The court of appeals twice held that the trial court erred in taking such action prior to certification of the election results. We agree.

"It is well-settled that this court will not consider, in an action to strike an issue from the ballot, a claim that the proposed amendment would be unconstitutional if approved, such claim being premature." *State, ex rel. Cramer,* v. *Brown* (1983), 7 Ohio St. 3d 5, 6, 7 OBR 317, 318, 454 N.E. 2d 1321, 1322, citing *Pfeifer* v. *Graves* (1913), 88 Ohio St. 473, 104 N.E. 529, paragraph five of the syllabus; *Weinland* v. *Fulton* (1918), 99 Ohio St. 10, 121 N.E. 816; *Cincinnati* v. *Hillenbrand* (1921), 103 Ohio St. 286, 133 N.E. 556, paragraph two of the syllabus; *State, ex rel. Marcolin,* v. *Smith* (1922), 105 Ohio St. 570, 138 N.E. 881; *State, ex rel. Kittel,* v. *Bigelow* (1941), 138 Ohio St. 497, 21 O.O. 380, 37 N.E. 2d 41, paragraph one of the syllabus.

Any challenge by the appellants to the charter amendment could have been made after it had become effective, not before. Therefore, we hold that the trial court erred in addressing the validity of the amendment before it became law.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

WRIGHT, J., concurring. I concur with the reasoning found in the majority opinion but write separately to note an additional ground on which the proposed charter amendment may be upheld.

While I certainly support the right of public employees to enter into binding collective bargaining agreements, such agreements must conform to the statutory provisions establishing that right — R.C. Chapter 4117. Applying those provisions to the facts in the instant case, I believe the proposed charter amendment is a type of law speci-

fically intended by the General Assembly to prevail over collective bargaining agreements.

R.C. 4117.10 states, in pertinent part, that:

"(A) An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement."

The fourth sentence of R.C. 4117. 10(A), however, explicitly states:

"Laws pertaining to civil rights * * * prevail over conflicting provisions of agreements between employee organizations and public employers. * * *"

There is no doubt in my mind that the proposed charter amendment is a "law pertaining to civil rights." Indeed, as the *amicus* coalition states, the proposal for an amendment was placed on the ballot after a growing number of complaints involving allegations of police misconduct were made to the city and the apparent failure of the city to address the problem. Such complaints constitute allegations of deprivations of "civil rights" in the ordinary and common usage of the term. R.C. 1.42 provides that "[w]ords and phrases shall be * * * construed according to the rules of * * * common usage. * * *"

A complaint alleging an assault by a police officer or police brutality involves conduct violative of the Fourteenth Amendment to the United States Constitution. See, *e.g., Taylor* v. *Canton, Ohio Police Dept.* (N.D. Ohio 1982), 544 F. Supp. 783, 788.

Similarly, a police officer who engages in an unreasonable search and seizure has violated the civil rights of the individual in contravention of the Fourth Amendment. See, *e.g., Monroe* v. *Pape* (1961), 365 U.S. 167; *Woods* v. *Dayton* (S.D. Ohio 1983), 574 F. Supp.

689, affirmed (C.A. 6, 1983), 734 F. 2d 17.

Finally, police misconduct violative of the United States Constitution is actionable under Section 1983, Title 42, of the United States Code. This statute — which was enacted as, and continues to be known as, the Civil Rights Act of 1871, as amended — provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any state * * *, subjects * * * any * * * person * * * to the deprivation of any rights * * * secured by the Constitution * * * shall be liable to the party injured. * * *" See, *e.g., Brandon* v. *Holt* (1985), 469 U.S. 464; *Bruner* v. *Dunaway* (C.A. 6, 1982), 684 F. 2d 422, 426, certiorari denied (1983), 459 U.S. 1171.

Therefore, the proposed charter amendment, which seeks to establish an additional remedy for police misconduct, is a "law pertaining to civil rights" in the same manner as those laws previously discussed. As such, by the express terms of R.C. 4117.10(A), the proposed charter amendment should prevail over conflicting provisions of the collective bargaining agreements.

DOUGLAS, J., dissenting. I must dissent from today's holding, which I believe to be unsupported, as well as unfair.

By permitting the appellee city of Cleveland to institute a police review board with disciplinary power over police officers, this court sets the stage for a serious erosion of the Ohio Public Employees Collective Bargaining Act, R.C. Chapter 4117. The General Assembly enacted this Act to "minimize the possibility of public-sector labor disputes and provid[e] for the orderly resolution of any disputes that occur." *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1,

5, 22 OBR 1, 4, 488 N.E. 2d 181, 185. This court has recently held that these policies underlying the Act are of statewide concern. *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50, 55, 26 OBR 42, 46-47, 496 N.E. 2d 983, 987-988. We emphasized in *Kettering* that the maintenance of stable employment relations between police officers and their employers is indisputably a matter of statewide concern, given the essential services provided by police and the grave threat to public safety which would result from the interruption of such services. *Id.* Nevertheless, the majority holds today that municipalities are free to frustrate the best-laid plans of the legislature by unilaterally imposing conditions of employment that are more properly a subject for collective bargaining. Unfortunately, the inevitable result will be a deterioration in relations between public employees and their employers, a result which the legislature, in its wisdom, moved to avoid by the passage of R.C. Chapter 4117. I am sorely disappointed to discover that this court is willing to endorse such maneuvers.

It is clear that the General Assembly intended to outlaw this kind of practice. That intent is embodied in R.C. 4117.10(A), which provides in pertinent part that:

"An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * *"

Obviously, the legislature meant by this provision to eliminate contravention of a collective bargaining agreement by such devices as the enactment of ordinances inconsistent with the agreement. It can certainly be argued that disciplinary standards and procedures pertain to the "terms and conditions" of appellants' employment. As such, they are a proper subject for collective bargaining. *Local 4501* v. *Ohio State Univ.* (1986), 24 Ohio St. 3d 191, 195, 24 OBR 420, 424, 494 N.E. 2d 1082, 1086. Both agreements at bar contain exhaustive provisions pertaining to grievance procedures which are applicable to matters of discipline. It is heartening to note that the majority opinion at least concedes this point. Thus, the agreement should be controlling and accorded proper deference. See R.C. 4117. 10(A).

It is evident that the changes in the disciplinary procedures applicable to members of the police force, as incorporated into the charter amendments, present a dispute between the bargaining organizations and the city. This being the case, it is pertinent to note, as just one example, the provision in Appendix B of the agreement between the Fraternal Order of Police and the city, which states that the grievance procedures described therein "shall be the exclusive method of reviewing and settling disputes between the City and the F.O.P. * * *." It is obvious from this provision that the parties to the agreement intended the grievance procedures to be the exclusive method of handling disputes. Clearly, the proposed charter amendments do not fall within the exclusive method provided for the reviewing and settling of disputes between the parties.

It is patently clear that the purpose of the charter amendments is to create a new system of disciplinary machinery. This new system includes a board consisting of persons, named by the mayor, who are not required to be appointed from within the department. Since the investigative powers of the board relate to alleged police violence toward persons not members of the department, the apparent role of the

board will be to stand as a civilian "watchdog," acting on public complaints and even initiating its own investigations of alleged police abuses. Clearly, this is not the sort of strictly internal disciplinary mechanism envisioned by the parties when they negotiated their agreements. Whatever one thinks of the utility of such police review boards, it cannot be denied that the collective bargaining agreements do not contemplate such a system. Permitting public employers to unilaterally impose such conditions violates the spirit of collective bargaining and encourages erosion of our decision in *Kettering, supra.* Further attacks will be limited only by the imagination of those persons who are inclined to do away with the General Assembly's pronouncement in this area.

Accordingly, I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

SWEENEY, J., concurs in the foregoing dissenting opinion.