[Cite as *State ex rel. Julnes v. S. Euclid City Council,* 130 Ohio St.3d 6, 2011-Ohio-4485.]

THE STATE EX REL. JULNES ET AL. *v.* SOUTH EUCLID CITY COUNCIL ET AL.

[Cite as *State ex rel. Julnes v. S. Euclid City Council,*

130 Ohio St.3d 6, 2011-Ohio-4485.]

*Elections—Municipalities—Referendum—R.C. 731.32—Filing certified copy of ordinance with council clerk complies with requirement that in absence of city auditor, copy shall be filed with official who performs duties of city auditor— Statement that certified copy of ordinance is "exact copy" of ordinance satisfies attestation requirement of R.C. 731.32—City charter provision subjecting emergency ordinances to referendum "except as otherwise provided by the Constitution or general laws"—Neither Constitution nor general laws conflict with charter provision.*

(No. 2011-1387—Submitted August 29, 2011—Decided September 7, 2011.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is an expedited election action for a writ of mandamus. Relators seek to compel a clerk of a city council to determine that a referendum petition is valid and sufficient, to compel the clerk to communicate that determination to the city council, and to compel the city council to either repeal the ordinance that is subject to the referendum or submit the ordinance to the city's electors at the November 8, 2011 election. Because relators have established their entitlement to the performance of the requested acts, we grant the writ.

**Facts**

{¶ 2} On June 27, 2011, respondent South Euclid City Council enacted Ordinance No. 05-11, which approved the request of intervening respondent,

FISE, L.L.C. ("FISE"), by amending the zoning for certain property from Class R-75 (One Family Residential District) to C-2 (General Commercial District) and declaring an emergency. Section 3 of the ordinance contained the following emergency declaration:

{¶ 3} "That this Ordinance is deemed to be an emergency measure necessary for the immediate preservation of the public peace, health, safety, and general welfare and for [the] further reason that this Ordinance is necessary for the City to improve its economic development opportunities; and to expedite the acquisition of property for use as public green space. Wherefore, this Ordinance shall take effect and be in force from and after the earliest period allowed by law and upon signature of the Mayor."

{¶ 4} On June 30, 2011, Carla Rautenberg and Susan Miller requested and received from respondent Keith A. Benjamin, the Clerk of the South Euclid City Council, two original certified copies of Ordinance No. 05-11, one of which they filed with the clerk and the other of which they attached to a referendum petition on the ordinance. The clerk posted the copy of the ordinance submitted to him by the referendum petitioners on a bulletin board in city hall.

{¶ 5} Relators, Anna Julnes, Christina Elswick, Joseph Liptow, Steven R. Pressman, and William E. Schuermann, are residents and electors of South Euclid and are the committee members for the referendum petition concerning Ordinance No. 05-11. On July 11, 2011, relators filed the referendum petition with the clerk of council. The referendum petition sought the submission of Ordinance No. 05-11 to the city's electorate for approval or rejection.

{¶ 6} The clerk of council held the petition for ten days and then transmitted it, with a certified copy of Ordinance No. 05-11, to the Cuyahoga County Board of Elections. The board of elections determined that the petition contained sufficient valid signatures and returned it to the clerk. On August 5, FISE submitted a protest to the clerk contesting the validity of the petition. Upon

the advice of the city law director, the clerk then determined that the petitioners had failed to file a certified copy of the ordinance with the city's director of finance and reported this conclusion to the city council. On August 8, 2011, in a special meeting, the city council decided not to submit Ordinance No. 05-11 to the electorate because the relators had not filed a certified copy of the ordinance with the city's finance director.

{¶ 7} Four days later, on August 12, relators filed this action. In their amended complaint filed three days later, relators request a writ of mandamus to compel Clerk of Council Benjamin "to forthwith determine that the Referendum Petition is valid and sufficient and communicate such determination to Respondent Council" and to compel the South Euclid City Council "to either forthwith repeal Ordinance 05-11 or forthwith submit it to the electors of South Euclid for their approval or rejection at the November 8, 2011 general election." We granted FISE's motion to intervene as an additional respondent, and the city council and its clerk filed an answer. The parties submitted evidence and briefs in accordance with the accelerated schedule in S.Ct.Prac.R. 10.9.

{¶ 8} This cause is now before this court for our consideration of the merits.

### Legal Analysis

*Mandamus*

{¶ 9} Relators claim that they are entitled to a writ of mandamus to compel the South Euclid City Council and its clerk to perform the requested acts concerning their referendum petition. To be entitled to the requested writ, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the city council and its clerk to provide it, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Moore v. Malone*, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 20. Because of the proximity of the November 8 election, relators lack an adequate remedy in the

ordinary course of law. *State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 25.

{¶ 10} Relators allege that they have satisfied the remaining requirements by demonstrating that the city council and the clerk abused their discretion and clearly disregarded applicable law by not treating their petition as a valid referendum petition.

R.C. 731.32 Precirculation Requirement

{¶ 11} Relators contend that the city council and the clerk abused their discretion and clearly disregarded R.C. 731.32 by determining that relators had not complied with the statute by failing to file a certified copy of the ordinance with the city's director of finance before they circulated the petition.

{¶ 12} The South Euclid Charter provides that for initiative, referendum, and recall petitions, "[t]he manner of signing, the method of circulating, and the form and requirements as to the affidavit, *and the other requirements of general law regulating initiative and referendum and recall petitions shall apply in this City except as otherwise provided in this Charter*." (Emphasis added.) Section 4, Article VIII, South Euclid Charter.

{¶ 13} Because the charter is silent on precirculation copies of ordinances for initiative and referendum petitions, R.C. 731.32 sets forth the applicable procedure. See *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 477, 764 N.E.2d 971 ("The statutory procedure governing municipal initiative and referendum in R.C. 731.28 through 731.41 applies to municipalities where the charter incorporates general law by reference, except where the statutory procedure conflicts with other charter provisions").

{¶ 14} "R.C. 731.32 does not expressly permit substantial compliance, so it requires strict compliance." *State ex rel. Barletta v. Fersch*, 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 17. "The requirement of [R.C.] 731.32 * * * is mandatory, and in the absence of compliance therewith no duty falls upon the

city clerk to receive and file with the board of elections a referendum petition otherwise valid." *State ex rel. Mika v. Lemon* (1959), 170 Ohio St. 1, 9 O.O.2d 304, 161 N.E.2d 488, paragraph two of the syllabus.

{¶ 15} R.C. 731.32 provides:

{¶ 16} "Whoever seeks to propose an ordinance or measure in a municipal corporation by initiative petition or files a referendum petition against any ordinance or measure shall, before circulating such petition, file a certified copy of the proposed ordinance or measure with the city auditor or the village clerk."

{¶ 17} South Euclid does not have a city auditor.  In the absence of an official so designated, the referendum petition must be filed "with the official who in fact performs the duties of city auditor."  *State ex rel. Donahue v. Bellbrook* (1975), 44 Ohio St.2d 36, 73 O.O.2d 157, 336 N.E.2d 635, syllabus.  The issue is thus whether the clerk, or as respondents assert, the director of finance "performs the duties customarily performed by the officials designated in [R.C.] 731.32." *Mika*, 170 Ohio St. at 5, 9 O.O.2d 304, 161 N.E.2d 488.

{¶ 18} In many respects, the South Euclid Director of Finance performs the significant fiscal duties that a city auditor otherwise would.  Section 3, Article V of the South Euclid Charter provides the following regarding the director of finance:

{¶ 19} "The Director of Finance shall be the head of the Finance Department and fiscal officer of the City.  He shall serve the Mayor and the Council as financial advisor in connection with municipal affairs.  He shall keep the financial records of the City, exhibiting accurate statements of all moneys received and expended, of all property owned by the City, and of all taxes and assessments.  He shall be custodian of all public money of the City, shall keep and preserve such money in the place or places authorized by ordinance, and shall disburse the same as may be required by law or ordinance.  He shall not allow the amount set aside for any appropriation to be overdrawn or drawn for any other

purpose. He may examine and audit the accounts of all officers, employees and departments. He may require evidence that the amount of any claim presented to him is due. He shall perform such other duties consistent with his office as the Mayor or the Council may direct."

{¶ 20} Many of these specified duties are usually performed by a city auditor. See R.C. 733.11 ("The city auditor shall keep the books of the city and exhibit accurate statements of all moneys received and expended, of all property owned by the city and the income derived therefrom, and of all taxes and assessments"); R.C. 733.12 ("At the end of each fiscal year, or more often if required by the legislative authority of the municipal corporation, the city auditor or village clerk shall audit the accounts of all officers and departments"); R.C. 733.13 ("The city auditor * * * shall not allow the amount set aside for any appropriation to be overdrawn * * *. When any claim is presented to the auditor * * *, he may require evidence that such amount is due * * *").

{¶ 21} Nevertheless, under the South Euclid Charter, most of the pertinent referendum duties associated with a city auditor under R.C. 731.29 are vested in the clerk of the city council. That is, pursuant to Section 2, Article VIII of the charter, the referendum petition must be submitted to the clerk of council, and the clerk must determine whether the petition is sufficient:

{¶ 22} "The electors of the municipality shall have the power to approve or reject at the polls any ordinance or resolution passed except as hereinafter provided. Within forty (40) days after the final passage of an ordinance or resolution, a petition signed by qualified electors which equal in number at least ten percent (10%) of the total votes cast for Mayor at the last regular mayoralty election may be filed with the Clerk of Council, requesting that such ordinance or resolution be either repealed or submitted to a vote of the electors; but if such petition is signed by qualified electors equal in number to at least twenty percent (20%) of the total votes cast for Mayor at the last regular mayoralty election, the

date of the election may be fixed therein, which shall be not less than ninety (90) days from the time of filing thereof. When said petition is filed, the Clerk of Council shall first ascertain the sufficiency of the petition, and if found sufficient, the Council shall thereupon, within thirty (30) days of the filing of such petition, reconsider such ordinance or resolution.

{¶ 23} "If, upon such reconsideration, the ordinance or resolution is not repealed, the Council shall submit it to a vote of the electors on the date fixed in the petition, or if no date be so fixed, at the next general or regular municipal election in any year occurring more than ninety (90) days after the filing of such petition."

{¶ 24} R.C. 731.29 similarly provides that a referendum petition is filed with the city auditor or village clerk and that after the board of elections examines the petition to determine the number of valid signatures, the city auditor or village clerk determines the sufficiency or validity of the petition:

{¶ 25} "When a petition, signed by ten per cent of the number of electors who voted for governor at the most recent general election for the office of governor in the municipal corporation, is filed with the city auditor or village clerk within thirty days after any ordinance or other measure is filed with the mayor or passed by the legislative authority of a village, or in case the mayor has vetoed the ordinance or any measure and returned it to council, such petition may be filed within thirty days after the council has passed the ordinance or measure over the veto, ordering that such ordinance or measure be submitted to the electors of such municipal corporation for their approval or rejection, such auditor or clerk shall, after ten days, and not later than four p.m. of the ninetieth day before the day of election, transmit a certified copy of the text of the ordinance or measure to the board of elections. The auditor or clerk shall transmit the petition to the board together with the certified copy of the ordinance or measure. The board shall examine all signatures on the petition to determine the number of

electors of the municipal corporation who signed the petition. The board shall return the petition to the auditor or clerk within ten days after receiving it, together with a statement attesting to the number of such electors who signed the petition. The board shall submit the ordinance or measure to the electors of the municipal corporation, for their approval or rejection, at the next general election occurring subsequent to ninety days after the auditor or clerk certifies the sufficiency and validity of the petition to the board of elections."

{¶ 26} In determining whether referendum petitioners must file a certified copy of the ordinance with the clerk of council or the director of finance in South Euclid, we must consider which of the two officials performs the statutory duties of a city auditor. The auditor's duties under R.C. 731.29 regarding referendum petitions are the most pertinent in the context of this case. Pursuant to R.C. 731.29 and 731.32, a city auditor receives a certified copy of the ordinance before the referendum petitioners circulate the petition, and the auditor also receives the signed petition and determines the sufficiency of the petition. In South Euclid, pursuant to the charter, the completed referendum petition is filed with the clerk of council, and the clerk makes an initial determination of its sufficiency. The finance director has no duties under the charter regarding referendum petitions.

{¶ 27} It is reasonable to conclude that for purposes of R.C. 731.32 in this context, the precirculation certified copy of the ordinance sought to be referred should be filed with the same municipal official who will also be receiving the completed referendum petition and who will be determining the sufficiency of the petition. "In enacting a statute, it is presumed that * * * [a] just and reasonable result is intended." R.C. 1.47(C). In this case, that official is the clerk of the city council.

{¶ 28} Therefore, the clerk of council and the city council abused their discretion and clearly disregarded R.C. 731.32 by determining that relators had not complied with the statute by filing a copy of the ordinance with the city's

clerk of council instead of the city's director of finance. This conclusion is consistent with our duty to liberally construe municipal referendum provisions in favor of the power reserved to the people to permit rather than to preclude the exercise of the power and to promote rather than to prevent or obstruct the object sought to be attained. See *State ex rel. Oster v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 480, 486, 756 N.E.2d 649.

R.C. 731.32 Certified-Copy Requirement

{¶ 29} FISE argues that even if the clerk's and council's rationale for rejecting the referendum petition was erroneous, their decision was correct because the referendum petition failed to comply with R.C. 731.32 for an additional reason. R.C. 731.32 requires that referendum petitioners, before circulating their petition for signatures, must file a "certified copy of the proposed ordinance" with the appropriate local official, here, the clerk of council. The certification requires an attestation:

{¶ 30} "As used in this section, 'certified copy' means a copy containing a written statement attesting that it is a true and exact reproduction of the original proposed ordinance or measure * * *."

{¶ 31} According to FISE, the copy of the ordinance filed before the circulation of the referendum petition included the following certification:

{¶ 32} "I Keith Benjamin do hereby certify that this Ordinance No. 05-11 is an exact copy of the Ordinance passed by South Euclid City Council on *27* June 2011." (Underlining sic.)

{¶ 33} " 'Attest' means 'to certify to the verity of a copy of a public document formally by signature,' and an attached copy of a document is '*one which has been examined and compared with the original*, with a certificate or memorandum of its correctness or memorandum of its correctness, *signed by the persons who have examined it*.' " (Emphasis sic.) *State ex rel. Lewis v. Rolston*,

115 Ohio St.3d 293, 2007-Ohio-5139, 874 N.E.2d 1200, ¶ 16, quoting Black's Law Dictionary (6th Ed.1990) 127-128.

**{¶ 34}** The clerk of council properly attested that the ordinance was an "exact copy" of the original. Although he did not specify that the certified copy was a "true and exact reproduction" of the original ordinance, he did state that the submitted ordinance was an "exact copy." Because "exact" is synonymous with "true," and "copy" is synonymous with "reproduction" in this context, the clerk complied with the R.C. 731.32 certification requirement. See Webster's Third New International Dictionary (1986) 790, defining "exact" as "exhibiting or characterized by strict, particular, and complete accordance with fact, *truth*, or an established standard or original," and Black's Law Dictionary (9th Ed.2009) 385, defining "copy" as "[a]n imitation or *reproduction* of an original." (Emphasis added.)

**{¶ 35}** Therefore, the referendum petitioners complied with the certification requirement of R.C. 731.32.

Emergency Declaration

**{¶ 36}** FISE next argues that the relators are not entitled to have their referendum petition treated as a valid petition because the ordinance sought to be referred is an emergency ordinance that is not subject to referendum.

**{¶ 37}** Relators counter that FISE's argument fails because even emergency ordinances are subject to referendum under Section 2, Article VIII of the South Euclid Charter, which provides:

**{¶ 38}** "Ordinances providing for a tax levy or for improvements petitioned for by the owners of a majority of the feet front of the property benefited and to be specially assessed therefor, and appropriation ordinances limited to the subject of appropriations shall not be subject to referendum, *but except as otherwise provided by the Constitution or general laws of the State of Ohio, all other ordinances and resolutions, including, but not limited to,*

*emergency ordinances and resolutions shall be subject to referendum*; provided, however, that emergency ordinances and resolutions shall go into effect at the time indicated therein." (Emphasis added.)

{¶ 39} As can be seen from this provision, the general rule in South Euclid that emergency legislation is subject to referendum does not apply when "otherwise provided by the Constitution or general laws of the State of Ohio."

{¶ 40} Relators are correct that Section 1d, Article II of the Ohio Constitution does not "otherwise provide" because that section is restricted to state laws. Section 1d states, "Laws providing for * * * emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. Such emergency laws upon a yea and nay vote must receive the vote of two-thirds of all the members elected to *each branch of the general assembly * * **." (Emphasis added.) Insofar as FISE cites some language in our decision in *Shryock v. Zanesville* (1915), 92 Ohio St. 375, 384, 110 N.E. 937, to assert otherwise, that language is mere dicta, given that our holding in that case was that G.C. 4227-3, the predecessor to R.C. 731.30, which exempts municipal emergency legislation from referendum, was constitutional. See also *State ex rel. Snyder v. Lucas Cty. Bd. of Elections* (1946), 78 Ohio App. 194, 33 O.O. 519, 69 N.E.2d 634 (court rejects relator's reliance on the *Shryock* dicta to support meritless claim that Section 1d, Article II limits the referendum powers reserved to the people of a municipality).

{¶ 41} Nor do the "general laws of the State of Ohio" "otherwise provide" that municipal emergency legislation is not subject to referendum. It is true that "[u]nder R.C. 731.29, all ordinances are subject to referendum 'except as provided by' R.C. 731.30. R.C. 731.30 provides that emergency ordinances are not subject to referendum. Instead, 'emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect.' R.C. 731.30." *State ex*

11

*rel. Laughlin v. James*, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 22.

{¶ 42} Yet under R.C. 731.41, "Sections 731.28 to 731.41, inclusive, of the Revised Code do not apply to any municipal corporation which adopts its own charter containing an initiative and referendum provision for its own ordinances and other legislative measures." South Euclid has adopted its own charter, and it expressly provides that with the few specified exceptions, "*all* other ordinances and resolutions, including, but not limited to, *emergency ordinances and resolutions shall be subject to referendum*." (Emphasis added.)

{¶ 43} To be sure, the charter language is peculiar. It makes emergency ordinances and resolutions subject to referendum "except as otherwise provided by the Constitution or general laws of the State of Ohio," but if we were to read into this exception the general provisions of R.C. 731.29 and 731.30 exempting emergency municipal legislation from referendum, we would render the charter specification that subjects such legislation to referendum meaningless. That is, the exception would, in effect, swallow the general rule. Given the ambiguity of the charter language as well as our oft-cited mandate to liberally construe municipal referendum provisions in favor of the power reserved to the people to permit rather than to preclude the exercise of the power and to promote rather than to prevent or obstruct the object sought to be attained, we will not do so. See *Oster*, 93 Ohio St.3d at 486, 756 N.E.2d 649.

{¶ 44} Therefore, R.C. 731.29 and 731.30 do not exempt Ordinance No. 05-11 from referendum, in light of the specific charter provision subjecting it to referendum.

## Conclusion

{¶ 45} Based on the foregoing, relators have established their entitlement to the requested relief. Ordinance No. 05-11 is subject to referendum, and the city council and its clerk have a clear legal duty to treat it as such. Therefore, we

grant a writ of mandamus to compel the Clerk of the South Euclid City Council to determine that relators' referendum petition is valid and sufficient and to communicate that determination to the city council and to compel the South Euclid Council to either repeal Ordinance No. 05-11 or to submit the ordinance to the city's electors at the November 8, 2011 election.

Writ granted.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

O'DONNELL, J., dissents.

————————————

**O'DONNELL, J., dissenting.**

{¶ 46} This case involves a referendum sought by relators on a duly enacted emergency ordinance rezoning certain property owned by FISE. The clerk and the city council have no duty to perform the requested acts for an emergency ordinance enacted in accordance with statutory requirements, and thus, the court should deny the writ. In its haste to grant the requested extraordinary relief in mandamus to afford relators a nonexistent right of referendum on the emergency ordinance, the majority sweeps aside years of longstanding precedent and interpretative analysis. Therefore, I respectfully dissent.

**Emergency Declaration**

{¶ 47} As the majority notes, FISE argues that the relators are not entitled to have their referendum petition considered as a valid petition because the ordinance sought to be referred is an emergency ordinance that is not subject to referendum, whereas relators claim that the charter provides that emergency ordinances like the one at issue here are subject to referendum.

{¶ 48} In resolving this disagreement, we are guided by the precept that "[m]unicipal charters must be construed to give effect to all separate provisions

and to harmonize them with statutory provisions whenever possible." *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 127, 698 N.E.2d 987. That is, "[i]n the absence of express language in a charter demonstrating a conflict with a statute, it is the duty of courts to harmonize the provisions of the charter and statutes relating to the same matter." *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 112, 712 N.E.2d 696. The presumption is thus that there is no conflict.

{¶ 49} Section 2, Article VIII of the South Euclid Charter states:

{¶ 50} "Ordinances providing for a tax levy or for improvements petitioned for by the owners of a majority of the feet front of the property benefited and to be specially assessed therefor, and appropriation ordinances limited to the subject of appropriations shall not be subject to referendum, *but except as otherwise provided by the Constitution or general laws of the State of Ohio, all other ordinances and resolutions, including, but not limited to, emergency ordinances and resolutions, shall be subject to referendum*; provided, however, that emergency ordinances and resolutions shall go into effect at the time indicated therein." (Emphasis added.)

{¶ 51} The pertinent language of Section 2, Article VIII of the South Euclid Charter thus specifies:

{¶ 52} (1) Certain ordinances—those providing for tax levies, certain property improvements, and appropriations—are not subject to referendum.

{¶ 53} (2) Except as otherwise provided by the Ohio Constitution or by the general laws of the state, other ordinances and resolutions, including emergency ordinances and resolutions, are subject to referendum.

{¶ 54} (3) Emergency ordinances and resolutions that are subject to referendum shall go into effect at the time indicated therein.

{¶ 55} The majority and relators rely on that portion of Section 2, Article VIII of the charter that provides that emergency ordinances and resolutions are

subject to referendum. But as FISE correctly observes, the cited charter provision is expressly limited by the phrase "except as otherwise provided by the Constitution or general laws of the State of Ohio." FISE argues that Section 1d, Article II of the Ohio Constitution, R.C. 731.29, and 731.30 "otherwise provide" that emergency municipal legislation is not subject to referendum.

**{¶ 56}** As the majority observes, relators are correct that Section 1d, Article II of the Ohio Constitution does not "otherwise provide" because that section is restricted to *state laws*.

**{¶ 57}** Nevertheless, notwithstanding the majority's holding to the contrary, the "general laws of the State of Ohio" *do* "otherwise provide" that municipal emergency legislation is not subject to referendum. "Under R.C. 731.29, all ordinances are subject to referendum 'except as provided by' R.C. 731.30. R.C. 731.30 provides that emergency ordinances are not subject to referendum. Instead, 'emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect.' R.C. 731.30. 'Such emergency ordinances or measures must, upon a yea or nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure.' Id." *State ex rel. Laughlin v. James*, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 22.

**{¶ 58}** As we explicitly held in *Taylor v. London* (2000), 88 Ohio St.3d 137, 723 N.E.2d 1089, paragraph two of the syllabus, "[i]n accordance with R.C. 731.29 and 731.30, emergency legislation adopted by a municipality is not subject to referendum."[1]

---

1. In support of their mandamus claim, relators cite the dissenting opinion in *Taylor*, 88 Ohio St.3d at 145, 723 N.E.2d 1089 (Lundberg Stratton, J., dissenting). However, the view expressed

{¶ 59} The majority opinion credits relators' contention in their reply brief that R.C. 731.29 and 731.30 are inapplicable here because under R.C. 731.41, "Sections 731.28 to 731.41, inclusive, of the Revised Code do not apply to any municipal corporation which adopts its own charter containing an initiative and referendum petition for its own ordinances and other legislative measures." Notably, relators could have, but did not, raise this claim in their initial merit brief even though FISE raised the issue of the applicability of R.C. 731.29 and 731.30 in its answer, and so relators arguably waived this argument. See *State ex rel. Murray v. Scioto Cty. Bd. of Elections*, 127 Ohio St.3d 280, 2010-Ohio-5846, 939 N.E.2d 157, ¶ 58 ("Because [relator in an expedited election case] could have raised this argument in her initial merit brief but failed to do so, we do not address this claim"), and cases cited therein. In fact, in their initial merit brief, relators ignored the charter language "except as otherwise provided by the Constitution or general laws of the State of Ohio," even though FISE relied on that language in both its answer and in an August 5, 2011 letter sent to the Clerk of the South Euclid Council outlining FISE's arguments against the referendum, which letter is attached as an exhibit to its motion to intervene in this case. By not raising their new argument in their initial brief, relators have deprived FISE of its opportunity to respond to it.

{¶ 60} Moreover, "[t]he statutory procedure governing municipal initiative and referendum in R.C. 731.28 through 731.41 applies to municipalities where the charter incorporates general law by reference, except where the statutory procedure *conflicts* with other charter provisions." (Emphasis added.) *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 477, 764 N.E.2d 971.

{¶ 61} It is certainly true that in matters of local self-government, including local elections, a municipal charter will prevail over *conflicting* state

in that opinion—that the General Assembly did not intend to insulate emergency ordinances from referendum when it enacted R.C. 731.30—has never been adopted by the court.

law, *Murray* at ¶ 40, but there is no conflict here. Nor can we presume a conflict, when the charter unambiguously incorporates state law exempting emergency legislation from referendum as a *precondition* to the applicability of the charter provision authorizing referendum for emergency ordinances and resolutions. That is, the specified charter exception incorporating conflicting state law precludes the effectiveness of any subsequent "express language in [the South Euclid] charter demonstrating a conflict" with R.C. 731.29 and 731.30. *Ryant*, 86 Ohio St.3d at 112, 712 N.E.2d 696; *State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections* (2001), 93 Ohio St.3d 529, 533, 757 N.E.2d 314.

{¶ 62} Consequently, although South Euclid has adopted its own charter, by specifying that the charter provision making certain ordinances and resolutions subject to referendum is expressly conditioned on whether exempting them from referendum is "otherwise provided by the * * * general laws of Ohio," the city's electorate has, in essence, incorporated R.C. 731.29 and 731.30. See, e.g., *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 37 (R.C. 731.41, which specifies that charter provisions prevail over conflicting statutes for municipal initiative and referendum provisions, is inapplicable where the charter incorporates general laws). A contrary construction of the charter would delete the language "except as otherwise provided by the * * * general laws of the State of Ohio"; this we cannot do. In fact, if the citizens of South Euclid had intended the interpretation claimed by relators, they would have simply left that language out of Section 2, Article VIII of the South Euclid Charter. The fact that they did not is dispositive of this case.

{¶ 63} Furthermore, FISE's construction of the charter provision, which applies the plain language of the exception, would not—as both the majority opinion and relators claim—render the contingent referendum provision "meaningless." Should the General Assembly in the future amend R.C. 731.29

and 731.30 to eliminate the provisions insulating emergency municipal legislation from referendum, the charter provision would apply to subject this legislation to referendum, with the additional exception that the emergency legislation shall take effect at the time indicated therein instead of it being held in abeyance for the referendum.

**{¶ 64}** Therefore, relators are incorrect that under the South Euclid Charter, Ordinance No. 05-11 was subject to referendum notwithstanding its emergency declaration. The charter specifically incorporates general law—R.C. 731.29 and 731.30—that exempts emergency ordinances from municipal referendum. Section 2, Article VIII, South Euclid Charter.

**{¶ 65}** The South Euclid City Council passed Ordinance No. 05-11 as emergency legislation. As long as the reasons specified in the ordinance are not conclusory, tautological, or illusory, the legislative determination of an emergency is not reviewable by a court notwithstanding the paramount right of citizens to referendum. See generally *Laughlin*, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 24-27; *Jurcisin v. Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St.3d 137, 519 N.E.2d 347, paragraph three of the syllabus ("Where an ordinance, passed by the council of a municipality, is declared to be an emergency * * * and sets forth the reasons for the immediate necessity thereof, the legislative determination of the existence of an emergency is not reviewable by a court"). The statutory requirement of a two-thirds vote by the municipal legislative authority "sufficiently protects the people's right to referendum." *Laughlin* at ¶ 26. As we explained in *State ex rel. Fostoria v. King* (1950), 154 Ohio St. 213, 220-221, 43 O.O. 1, 94 N.E.2d 697:

**{¶ 66}** "It may seem strange to sustain legislation as emergency legislation not subject to referendum, where there is in fact no emergency, or where the reasons given for the necessity and for declaring the emergency do not appear to be valid reasons. However, as does Section 4227-3, General Code [now R.C.

731.30], provisions for emergency legislation usually safeguard referendum rights by requiring substantially more than a majority vote to enact emergency legislation. The statutory requirement of stating reasons for declaring the emergency is provided only to satisfy voters that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency. *If there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an opportunity to take appropriate action in the subsequent election of their representatives.*" (Emphasis added.) See also *Laughlin* at ¶ 27; *State ex rel. Moore v. Abrams* (1991), 62 Ohio St.3d 130, 132, 580 N.E.2d 11.

{¶ 67} Moreover—and relators do not assert otherwise—it appears that at least some of the reasons specified by the South Euclid City Council are sufficient to support the emergency declaration even if their soundness may be subject to debate. See Section 3 of Ordinance No. 05-11, specifying that the ordinance is deemed to be an emergency measure because, inter alia, it "is necessary for the City to improve its economic development opportunities" and "to expedite the acquisition of property for use as public green space."

{¶ 68} Nor would it matter if the city council enacted Ordinance No. 05-11 as an emergency ordinance with an intent to defeat any potential referendum.[2] *Laughlin* at ¶ 37, citing *State ex rel. Tester v. Ottawa Cty. Bd. of Elections* (1962), 174 Ohio St. 15, 16, 21 O.O.2d 107, 185 N.E.2d 762, and *Taylor*, 88 Ohio St.3d at 138, 723 N.E.2d 1089, fn. 3. The citizens' remedy is through subsequent election of the city council members. See *Laughlin* at ¶ 27; *King*, 154 Ohio St. at 220-221, 43 O.O. 1, 94 N.E.2d 697.

{¶ 69} Therefore, even if the reason given by the city council and its clerk for rejecting relators' referendum petition—that they violated R.C. 731.32 by

---

2. There is no evidence here that this was why the city council enacted Ordinance No. 05-11 as an emergency ordinance.

filing a precirculation certified copy of the ordinance with the wrong official—was erroneous, relators are still not entitled to the requested extraordinary relief in mandamus to compel the South Euclid City Council and its clerk to proceed as if the referendum petition were valid because Ordinance No. 05-11 was emergency legislation that was not subject to referendum. "It is axiomatic that '[m]andamus will not issue to compel a vain act.' "  See *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529, ¶ 17, quoting *State ex rel. Moore v. Malone*, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 38.

### Conclusion

{¶ 70} Based on the foregoing, relators have not established either a clear legal right to have the city council and its clerk determine that the referendum petition is valid and proceed accordingly or a corresponding clear legal duty on the part of the council and clerk to do so.  Ordinance No. 05-11 is an emergency ordinance that is not subject to referendum, and the writ should be denied.  Therefore, because by holding otherwise the majority ignores applicable precedent and adopts a tortured construction of Section 2, Article VIII of the South Euclid Charter that contravenes its plain language, I dissent.

————————————

McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo, for relators.

Michael P. Lograsso, South Euclid Director of Law; and Walter & Haverfield, L.L.P., and R. Todd Hunt, for respondents.

Berns, Ockner & Greenberger, L.L.C., Sheldon Berns, and Benjamin J. Ockner, for intervening respondent.

————————————