THE STATE, EX REL. SNYDER, *v.* BOARD OF ELECTIONS OF LUCAS COUNTY ET AL.

(No. 4161—Decided April 5, 1946.)

*Messrs. Lord, Hayward & Smith,* for relatrix.
*Mr. Joel S. Rhinefort,* prosecuting attorney, *Mr. Harry Friberg* and *Mr. Lehr Fess,* for respondents.

CARPENTER, J. This is an action in prohibition, originating in this court, by a taxpayer as relatrix to re-

strain the Board of Elections of Lucas county from submitting to the electors of Toledo, a charter city, at a special election on April 11, 1946, a referendum on an ordinance passed by the city council on February 28, 1946, imposing a one per cent tax on payrolls and incomes within the city.

The petition alleges that a referendum petition was filed and certified as sufficient by the clerk of council to the board and election date fixed, all as provided in the city charter. To the petition a general demurrer was filed. As the case is thus submitted, the sole question presented is whether the provisions of the charter purporting to give the people of the city the right to a referendum vote upon such an ordinance are in conflict with Section 1d of Article II of the Constitution of Ohio and, therefore, void.

It is not contended that this ordinance is invalid; in fact, the relator's claim is that it is so valid it cannot be vetoed even by an adverse referendum vote, and that, therefore, the city should not spend money on an election.

Toledo became a charter city on January 1, 1915. The following charter sections are material in this consideration:

"Sec. 26. The Council. Except as reserved to the people by this charter, the legislative power of the city shall be vested in a council of nine (9) members.
* * *

"Sec. 81. Referendum on Petition. Every ordinance passed by the council shall be subject to the referendum if at any time within thirty days a petition signed by electors equal in number to at least fifteen percent of the total number of ballots cast for councilmen at the preceding municipal election be filed with the clerk, requesting that such ordinance be submitted to the people for consideration.

"Sec. 83. Special Referendum Elections. The ordinance on which a referendum vote is demanded by petition shall be submitted at a special election held not later than thirty days after the clerk has certified to the election authorities that the petition for submission is in accordance with the requirements of this charter; but if a regular election is to be held within six months, such ordinance shall be submitted at the regular election, unless the council directs that an earlier and special election be held.

"Sec. 85. Emergency Measures Subject to Referendum. An emergency measure shall be subject to referendum as other ordinances or resolutions. If, upon a referendum, it be not approved, it shall stand repealed, but any expense incurred in accordance with the provisions thereof and before the disapproval by referendum shall be paid under the authority thereof as if the measure were still effective. Until repealed upon referendum it shall continue effective."

The details of the petition and election are provided for in the charter.

The Constitution of Ohio provides:

Section 3, Article XVIII. "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Section 7, Article XVIII. "Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

"The general laws referred to [in Section 3, Article XVIII of the Constitution] are obviously such as relate to police, sanitary and other similar regulations, and which apply uniformly throughout the state."

*Fitzgerald et al., Bd. of Deputy State Supervisors,* v. *City of Cleveland,* 88 Ohio St., 338, 359, 103 N. E., 512, Ann. Cas. 1915B, 106.

Article II of the Constitution, in Sections 1a to 1g, makes detailed self-executing provisions for the subjection to referendum of laws passed by the General Assembly.

Section 1d, of Article II, *supra,* reads as follows:

"Laws providing for tax levies, appropriations for the current expenses of the state government and state institutions, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. Such emergency laws upon a yea and nay vote must receive the vote of two-thirds of all the members elected to each branch of the General Assembly, and the reasons for such necessity shall be set forth in one section of the law, which section shall be passed only upon a yea and nay vote, upon a separate roll call thereon. The laws mentioned in this section shall not be subject to the referendum."

Section 1f of Article II, *supra,* reads as follows:

"The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law."

It is the contention of the relatrix that Section 1d, *supra,* precludes a referendum on the ordinance because (a) it levies a tax and (b) it was passed as an emergency measure, as it recites "for the immediate preservation of the public safety and welfare."

The specific question thus presented is: Does the charter by section 81 thereof, making "every ordinance passed by the council * * * subject to the referendum," and by section 85 thereof, making "an emergency meas-

ure * * * subject to referendum as other ordinances or resolutions," violate Section 1d of Article II of the Constitution as to the referendum on this ordinance?

In other words, does Section 1d, *supra,* limit the apparently very broad and absolute power given by Section 3, Article XVIII of the Constitution to municipalities "to exercise all powers of local self-government" and the referendum power reserved by Section 1f of Article II, *supra,* to the people of each municipality "on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action?"

In support of the affirmative answer for which the relatrix contends, she cites some of the record of the discussion of those sections in 1 Constitutional Convention of 1912, Proceeding and Debates, 554, 733, 851, 943, 945.

From the cited record it appears clear, by their discussion and several drafts of these sections relating to the referendum, that the members had in mind restrictions on state-wide measures enacted by the General Assembly, and not restrictions on the powers of the people of municipalities over the ordinances passed by their councils relating solely to their local affairs.

Another authority, strongly relied upon by the relatrix, is *Shryock, a Taxpayer,* v. *City of Zanesville,* 92 Ohio St., 375, 110 N. E., 937, where Chief Justice Nichols in his opinion, on pages 384 to 386, used some language which relatrix's counsel contend indicates he thought Section 1d, *supra,* did so limit the referendum powers of the people of municipalities.

The question at bar was not before the court in that case, and the judge's comments are in some respects *obiter*; at least that case differs from this case in that Zanesville was a non-charter city and it had no provision for a referendum upon its ordinances. The

court in that case was applying the procedural provisions of Section 4227-1 *et seq.,* General Code (103 Ohio Laws, 211), and particularly the limitations of Section 4227-3.

Earlier in the opinion in the *Shryock case,* the Chief Justice said on page 380:

"All of the sections dealing with the subject [the initiative and referendum in Article II of the Constitution], with the exception of the particular section in question (1*f*), deal with it exclusively as a state-wide proposition."

Again, on page 383, after enumerating the details which the Constitution contains to make its initiative and referendum provisions self-executing, he said:

"* * * and finally provides, in Section 1*d,* as to just what laws shall be exempt from the referendum, among others, 'emergency laws necessary for the immediate preservation of the public peace, health or safety.'

"All of these have reference to state laws and none to the ordinances or resolutions of the councils of municipalities."

In this connection the important provision of Section 1*d* of Article II is the last sentence: "The laws mentioned in this section shall not be subject to the referendum." In the first sentence we find the laws referred to are of three classes:

"[1] Laws providing for tax levies, [2] appropriations for the current expenses of the state government and state institutions, and [3] emergency laws necessary for the immediate preservation of the public peace, health or safety * * *."

From the next sentence it is manifest that "emergency laws" allude only to those passed by the General Assembly, and of course those mentioned in class 2 could only come from that source. The context of the section and the comment of the Chief Justice in the

*Shryock case,* although *obiter,* very well warrant the conclusion that Section 1*d* has reference to state laws only and not to ordinances or resolutions of the councils of municipalities.

It should also be noted that Section 4227-12, General Code, indicates that the General Assembly contemplated that municipalities had or could adopt charter provisions providing for a referendum on their "own ordinances and other legislative measures." This was pointed out in *Dillon* v. *City of Cleveland,* 117 Ohio St., 258, 158 N. E., 606, and Chief Justice Marshall, on page 276, speaking of the word "law" in the final phrase of Section 1*f,* said that a city charter "is a 'law' as much as if it were enacted by the Legislature of the state."

Here attention should be called to the fact that the closing clause of that section, *i. e.,* "such powers shall be exercised in the manner now or hereafter provided by law," does not place a limit on the power of the referendum, but only on the manner of its exercise. Applying the reasoning of Chief Justice Marshall in the *Dillon case,* such "manner" may be provided either by laws as in Section 4227-1 *et seq.,* General Code, or by charter, and Toledo has adopted the latter. On page 385 of the *Shryock case,* Chief Justice Nichols said this clause "provides merely that the manner of exercising the right or power shall be provided by law."

The constitutional provision for the referendum in municipalities is not made self-executing, as it is as to state laws, and Section 4227-1 *et seq.,* General Code, were enacted to implement the power where such is not done by charter.

The Supreme Court in opinions and syllabi has pleaded eloquently for a liberal construction of the

powers of the people over the measures enacted by legislative authorities. Chief Justice Nichols, at the end of his opinion in the *Shryock case,* speaking of the initiative and referendum, said at page 386:

"\* \* \* it is the solemn duty of all courts to keep hands off and to avoid giving to the provisions of the Constitution on that subject a strained construction which, by reason of its very burdensomeness and unreasonableness, would tend to depopularize it."

In the very recent case of the *State, ex rel. City of Middletown,* v. *City Commission,* 140 Ohio St., 368, 44 N. E. (2d), 459, the Supreme Court said, in paragraph one of the syllabus:

"The provisions of the state Constitution authorizing and providing the manner of submission of municipal ordinances to a referendum vote should be so construed as to permit rather than preclude the exercise of the right conferred. The object clearly sought to be attained by such provisions should be promoted rather than prevented or obstructed."

Looking to the broad—near absolute—powers conferred upon municipalities by Section 3, Article XVIII of the Constitution "to exercise all powers of local self-government" and safeguarded to the people by referendum as expressed in Section 1*f,* Article II, "on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action," this court can but conclude that the charter provisions expressly reserving to the people of Toledo the right of a referendum vote on this tax ordinance are valid and are not in any way repugnant to the Constitution. To hold otherwise would be "giving the Constitution a strained construction," would be obstructing "the object clearly sought to be attained by such provision" and would be denying to

the voters of the city a right which the Constitution expressly gives them in Section 1ƒ of Article II of the Constitution.

The prayer for a writ of prohibition is denied.

*Writ denied.*

STUART and CONN, JJ., concur.