Per Curiam.
{¶ 1} This is an expedited election action for a writ of mandamus. Relators seek to compel a clerk of a city council to determine that a referendum petition is valid and sufficient, to compel the clerk to communicate that determination to the city council, and to compel the city council to either repeal the ordinance that is subject to the referendum or submit the ordinance to the city’s electors at the November 8, 2011 election. Because relators have established their entitlement to the performance of the requested acts, we grant the writ.
Facts
{¶ 2} On June 27, 2011, respondent South Euclid City Council enacted Ordinance No. 05-11, which approved the request of intervening respondent, FISE, L.L.C. (“FISE”), by amending the zoning for certain property from Class R-75 (One Family Residential District) to C-2 (General Commercial District) and declaring an emergency. Section 3 of the ordinance contained the following emergency declaration:
{¶ 3} “That this Ordinance is deemed to be an emergency measure necessary for the immediate preservation of the public peace, health, safety, and general welfare and for [the] further reason that this Ordinance is necessary for the City to improve its economic development opportunities; and to expedite the acquisition of property for use as public green space. Wherefore, this Ordinance shall take effect and be in force from and after the earliest period allowed by law and upon signature of the Mayor.”
*7 {¶ 4} On June 30, 2011, Carla Rautenberg and Susan Miller requested and received from respondent Keith A. Benjamin, the Clerk of the South Euclid City Council, two original certified copies of Ordinance No. 05-11, one of which they filed with the clerk and the other of which they attached to a referendum petition on the ordinance. The clerk posted the copy of the ordinance submitted to him by the referendum petitioners on a bulletin board in city hall.
{¶ 5} Relators, Anna Julnes, Christina Elswiek, Joseph Liptow, Steven R. Pressman, and William E. Schuermann, are residents and electors of South Euclid and are the committee members for the referendum petition concerning Ordinance No. 05-11. On July 11, 2011, relators filed the referendum petition with the clerk of council. The referendum petition sought the submission of Ordinance No. 05-11 to the city’s electorate for approval or rejection.
{¶ 6} The clerk of council held the petition for ten days and then transmitted it, with a certified copy of Ordinance No. 05-11, to the Cuyahoga County Board of Elections. The board of elections determined that the petition contained sufficient valid signatures and returned it to the clerk. On August 5, FISE submitted a protest to the clerk contesting the validity of the petition. Upon the advice of the city law director, the clerk then determined that the petitioners had failed to file a certified copy of the ordinance with the city’s director of finance and reported this conclusion to the city council. On August 8, 2011, in a special meeting, the city council decided not to submit Ordinance No. 05-11 to the electorate because the relators had not filed a certified copy of the ordinance with the city’s finance director.
{¶ 7} Four days later, on August 12, relators filed this action. In their amended complaint filed three days later, relators request a writ of mandamus to compel Clerk of Council Benjamin “to forthwith determine that the Referendum Petition is valid and sufficient and communicate such determination to Respondent Council” and to compel the South Euclid City Council “to either forthwith repeal Ordinance 05-11 or forthwith submit it to the electors of South Euclid for their approval or rejection at the November 8, 2011 general election.” We granted FISE’s motion to intervene as an additional respondent, and the city council and its clerk filed an answer. The parties submitted evidence and briefs in accordance with the accelerated schedule in S.Ct.Prac.R. 10.9.
{If 8} This cause is now before this court for our consideration of the merits.
Legal Analysis Mandamus
{¶ 9} Relators claim that they are entitled to a writ of mandamus to compel the South Euclid City Council and its clerk to perform the requested acts concerning their referendum petition. To be entitled to the requested writ, relators must *8 establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the city council and its clerk to provide it, and the lack of an adequate remedy in the ordinary course of law. State ex rel. Moore v. Malone, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶20. Because of the proximity of the November 8 election, relators lack an adequate remedy in the ordinary course of law. State ex rel. Owens v. Brunner, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 25.
{¶ 10} Relators allege that they have satisfied the remaining requirements by demonstrating that the city council and the clerk abused their discretion and clearly disregarded applicable law by not treating their petition as a valid referendum petition.
R.C. 731.32 Precirculation Requirement
{¶ 11} Relators contend that the city council and the clerk abused their discretion and clearly disregarded R.C. 731.32 by determining that relators had not complied with the statute by failing to file a certified copy of the ordinance with the city’s director of finance before they circulated the petition.
{¶ 12} The South Euclid Charter provides that for initiative, referendum, and recall petitions, “[t]he manner of signing, the method of circulating, and the form and requirements as to the affidavit, and the other requirements of general law regulating initiative and referendum and recall petitions shall apply in this City except as otherwise provided in this Charter.” (Emphasis added.) Section 4, Article VIII, South Euclid Charter.
{¶ 13} Because the charter is silent on precirculation copies of ordinances for initiative and referendum petitions, R.C. 731.32 sets forth the applicable procedure. See State ex rel. Ditmars v. McSweeney (2002), 94 Ohio St.3d 472, 477, 764 N.E.2d 971 (“The statutory procedure governing municipal initiative and referendum in R.C. 731.28 through 731.41 applies to municipalities where the charter incorporates general law by reference, except where the statutory procedure conflicts with other charter provisions”).
{¶ 14} “R.C. 731.32 does not expressly permit substantial compliance, so it requires strict compliance.” State ex rel. Barletta v. Fersch, 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 17. “The requirement of [R.C.] 731.32 * * * is mandatory, and in the absence of compliance therewith no duty falls upon the city clerk to receive and file with the board of elections a referendum petition otherwise valid.” State ex rel. Mika v. Lemon (1959), 170 Ohio St. 1, 9 O.O.2d 304, 161 N.E.2d 488, paragraph two of the syllabus.
{¶ 15} R.C. 731.32 provides:
{¶ 16} “Whoever seeks to propose an ordinance or measure in a municipal corporation by initiative petition or files a referendum petition against any *9 ordinance or measure shall, before circulating such petition, file a certified copy of the proposed ordinance or measure with the city auditor or the village clerk.”
{¶ 17} South Euclid does not have a city auditor. In the absence of an official so designated, the referendum petition must be filed “with the official who in fact performs the duties of city auditor.” State ex rel. Donahue v. Bellbrook (1975), 44 Ohio St.2d 36, 73 O.O.2d 157, 336 N.E.2d 635, syllabus. The issue is thus whether the clerk or, as respondents assert, the director of finance “performs the duties customarily performed by the officials designated in [R.C.] 731.32.” Mika, 170 Ohio St. at 5, 9 O.O.2d 304, 161 N.E.2d 488.
{¶ 18} In many respects, the South Euclid Director of Finance performs the significant fiscal duties that a city auditor otherwise would. Section 3, Article V of the South Euclid Charter provides the following regarding the director of finance:
{¶ 19} “The Director of Finance shall be the head of the Finance Department and fiscal officer of the City. He shall serve the Mayor and the Council as financial advisor in connection with municipal affairs. He shall keep the financial records of the City, exhibiting accurate statements of all moneys received and expended, of all property owned by the City, and of all taxes and assessments. He shall be custodian of all public money of the City, shall keep and preserve such money in the place or places authorized by ordinance, and shall disburse the same as may be required by law or ordinance. He shall not allow the amount set aside for any appropriation to be overdrawn or drawn for any other purpose. He may examine and audit the accounts of all officers, employees and departments. He may require evidence that the amount of any claim presented to him is due. He shall perform such other duties consistent with his office as the Mayor or the Council may direct.”
{¶ 20} Many of these specified duties are usually performed by a city auditor. See R.C. 733.11 (“The city auditor shall keep the books of the city and exhibit accurate statements of all moneys received and expended, of all property owned by the city and the income derived therefrom, and of all taxes and assessments”); R.C. 733.12 (“At the end of each fiscal year, or more often if required by the legislative authority of the municipal corporation, the city auditor or village clerk shall audit the accounts of all officers and departments”); R.C. 733.13 (“The city auditor * * * shall not allow the amount set aside for any appropriation to be overdrawn * * *. When any claim is presented to the auditor * * *, he may require evidence that such amount is due * * * ”).
{¶21} Nevertheless, under the South Euclid Charter, most of the pertinent referendum duties associated with a city auditor under R.C. 731.29 are vested in the clerk of the city council. That is, pursuant to Section 2, Article VIII of the *10 charter, the referendum petition must be submitted to the clerk of council, and the clerk must determine whether the petition is sufficient:
{¶ 22} “The electors of the municipality shall have the power to approve or reject at the polls any ordinance or resolution passed except as hereinafter provided. Within forty (40) days after the final passage of an ordinance or resolution, a petition signed by qualified electors which equal in number at least ten percent (10%) of the total votes cast for Mayor at the last regular mayoralty election may be filed with the Clerk of Council, requesting that such ordinance or resolution be either repealed or submitted to a vote of the electors; but if such petition is signed by qualified electors equal in number to at least twenty percent (20%) of the total votes cast for Mayor at the last regular mayoralty election, the date of the election may be fixed therein, which shall be not less than ninety (90) days from the time of filing thereof. When said petition is filed, the Clerk of Council shall first ascertain the sufficiency of the petition, and if found sufficient, the Council shall thereupon, within thirty (30) days of the filing of such petition, reconsider such ordinance or resolution.
{¶ 23} “If, upon such reconsideration, the ordinance or resolution is not repealed, the Council shall submit it to a vote of the electors on the date fixed in the petition, or if no date be so fixed, at the next general or regular municipal election in any year occurring more than ninety (90) days after the filing of such petition.”
{¶ 24} R.C. 731.29 similarly provides that a referendum petition is filed with the city auditor or village clerk and that after the board of elections examines the petition to determine the number of valid signatures, the city auditor or village clerk determines the sufficiency or validity of the petition:
{¶ 25} “When a petition, signed by ten per cent of the number of electors who voted for governor at the most recent general election for the office of governor in the municipal corporation, is filed with the city auditor or village clerk within thirty days after any ordinance or other measure is filed with the mayor or passed by the legislative authority of a village, or in case the mayor has vetoed the ordinance or any measure and returned it to council, such petition may be filed within thirty days after the council has passed the ordinance or measure over the veto, ordering that such ordinance or measure be submitted to the electors of such municipal corporation for their approval or rejection, such auditor or clerk shall, after ten days, and not later than four p.m. of the ninetieth day before the day of election, transmit a certified copy of the text of the ordinance or measure to the board of elections. The auditor or clerk shall transmit the petition to the board together with the certified copy of the ordinance or measure. The board shall examine all signatures on the petition to determine the number of electors of the municipal corporation who signed the petition. The board shall *11 return the petition to the auditor or clerk within ten days after receiving it, together with a statement attesting to the number of such electors who signed the petition. The board shall submit the ordinance or measure to the electors of the municipal corporation, for their approval or rejection, at the next general election occurring subsequent to ninety days after the auditor or clerk certifies the sufficiency and validity of the petition to the board of elections.”
{¶ 26} In determining whether referendum petitioners must file a certified copy of the ordinance with the clerk of council or the director of finance in South Euclid, we must consider which of the two officials performs the statutory duties of a city auditor. The auditor’s duties under R.C. 731.29 regarding referendum petitions are the most pertinent in the context of this case. Pursuant to R.C. 731.29 and 731.32, a city auditor receives a certified copy of the ordinance before the referendum petitioners circulate the petition, and the auditor also receives the signed petition and determines the sufficiency of the petition. In South Euclid, pursuant to the charter, the completed referendum petition is filed with the clerk of council, and the clerk makes an initial determination of its sufficiency. The finance director has no duties under the charter regarding referendum petitions.
{¶ 27} It is reasonable to conclude that for purposes of R.C. 731.32 in this context, the precirculation certified copy of the ordinance sought to be referred should be filed with the same municipal official who will also be receiving the completed referendum petition and who will be determining the sufficiency of the petition. “In enacting a statute, it is presumed that * * * [a] just and reasonable result is intended.” R.C. 1.47(C). In this case, that official is the clerk of the city council.
{¶ 28} Therefore, the clerk of council and the city council abused their discretion and clearly disregarded R.C. 731.32 by determining that relators had not complied with the statute by filing a copy of the ordinance with the city’s clerk of council instead of the city’s director of finance. This conclusion is consistent with our duty to liberally construe municipal referendum provisions in favor of the power reserved to the people to permit rather than to preclude the exercise of the power and to promote rather than to prevent or obstruct the object sought to be attained. See State ex rel. Oster v. Lorain Cty. Bd. of Elections (2001), 93 Ohio St.3d 480, 486, 756 N.E.2d 649.
R.C. 731.32 Certified-Copy Requirement
{¶ 29} FISE argues that even if the clerk’s and council’s rationale for rejecting the referendum petition was erroneous, their decision was correct because the referendum petition failed to comply with R.C. 731.32 for an additional reason. R.C. 731.32 requires that referendum petitioners, before circulating their petition for signatures, must file a “certified copy of the proposed ordinance” with the *12 appropriate local official, here, the clerk of council. The certification requires an attestation:
{¶ 30} “As used in this section, ‘certified copy’ means a copy containing a written statement attesting that it is a true and exact reproduction of the original proposed ordinance or measure * *
{¶ 31} According to FISE, the copy of the ordinance filed before the circulation of the referendum petition included the following certification:
{¶ 32} “I Keith Benjamin do hereby certify that this Ordinance No. 05-11 is an exact copy of the Ordinance passed by South Euclid City Council on 27 June 2011.”
{¶ 33} “ ‘Attest’ means ‘to certify to the verity of a copy of a public document formally by signature,’ and an attached copy of a document is ‘one which has been examined and compared with the original, with a certificate or memorandum of its correctness or memorandum of its correctness, signed by the persons who have examined it’ ” (Emphasis sic.) State ex rel. Lewis v. Rolston, 115 Ohio St.3d 293, 2007-Ohio-5139, 874 N.E.2d 1200, ¶ 16, quoting Black’s Law Dictionary (6th Ed.1990) 127-128.
{¶ 34} The clerk of council properly attested that the ordinance was an “exact copy” of the original. Although he did not specify that the certified copy was a “true and exact reproduction” of the original ordinance, he did state that the submitted ordinance was an “exact copy.” Because “exact” is synonymous with “true,” and “copy” is synonymous with “reproduction” in this context, the clerk complied with the R.C. 731.32 certification requirement. See Webster’s Third New International Dictionary (1986) 790, defining “exact” as “exhibiting or characterized by strict, particular, and complete accordance with fact, truth, or an established standard or original,” and Black’s Law Dictionary (9th Ed.2009) 385, defining “copy” as “[a]n imitation or reproduction of an original.” (Emphasis added.)
{¶ 35} Therefore, the referendum petitioners complied with the certification requirement of R.C. 731.32.
Emergency Declaration
{¶36} FISE next argues that the relators are not entitled to have their referendum petition treated as a valid petition because the ordinance sought to be referred is an emergency ordinance that is not subject to referendum.
{¶ 37} Relators counter that FISE’s argument fails because even emergency ordinances are subject to referendum under Section 2, Article VIII of the South Euclid Charter, which provides:
*13 {¶ 38} “Ordinances providing for a tax levy or for improvements petitioned for by the owners of a majority of the feet front of the property benefited and to be specially assessed therefor, and appropriation ordinances limited to the subject of appropriations shall not be subject to referendum, but except as otherwise provided by the Constitution or general laws of the State of Ohio, all other ordinances and resolutions, including, but not limited to, emergency ordinances and resolutions shall be subject to referendum; provided, however, that emergency ordinances and resolutions shall go into effect at the time indicated therein.” (Emphasis added.)
{¶ 39} As can be seen from this provision, the general rule in South Euclid that emergency legislation is subject to referendum does not apply when “otherwise provided by the Constitution or general laws of the State of Ohio.”
{¶ 40} Relators are correct that Section Id, Article II of the Ohio Constitution does not “otherwise provide” because that section is restricted to state laws. Section Id states, “Laws providing for * * * emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. Such emergency laws upon a yea and nay vote must receive the vote of two-thirds of all the members elected to each branch of the general assembly * * (Emphasis added.) Insofar as FISE cites some language in our decision in Shryock v. Zanesville (1915), 92 Ohio St. 375, 384, 110 N.E. 937, to assert otherwise, that language is mere dicta, given that our holding in that case was that G.C. 4227-3, the predecessor to R.C. 731.30, which exempts municipal emergency legislation from referendum, was constitutional. See also State ex rel. Snyder v. Lucas Cty. Bd. of Elections (1946), 78 Ohio App. 194, 33 O.O. 519, 69 N.E.2d 634 (court rejects relator’s reliance on the Shryock dicta to support meritless claim that Section Id, Article II limits the referendum powers reserved to the people of a municipality).
{¶ 41} Nor do the “general laws of the State of Ohio” “otherwise provide” that municipal emergency legislation is not subject to referendum. It is true that “[u]nder R.C. 731.29, all ordinances are subject to referendum ‘except as provided by’ R.C. 731.30. R.C. 731.30 provides that emergency ordinances are not subject to referendum. Instead, ‘emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect.’ R.C. 731.30.” State ex rel. Laughlin v. James, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 22.
{¶42} Yet under R.C. 731.41, “Sections 731.28 to 731.41, inclusive, of the Revised Code do not apply to any municipal corporation which adopts its own charter containing an initiative and referendum provision for its own ordinances and other legislative measures.” South Euclid has adopted its own charter, and it expressly provides that with the few specified exceptions, “all other ordinances *14 and resolutions, including, but not limited to, emergency ordinances and resolutions shall be subject to referendum.” (Emphasis added.)
{¶ 43} To be sure, the charter language is peculiar. It makes emergency ordinances and resolutions subject to referendum “except as otherwise provided by the Constitution or general laws of the State of Ohio,” but if we were to read into this exception the general provisions of R.C. 731.29 and 731.30 exempting emergency municipal legislation from referendum, we would render the charter specification that subjects such legislation to referendum meaningless. That is, the exception would, in effect, swallow the general rule. Given the ambiguity of the charter language as well as our oft-cited mandate to liberally construe municipal referendum provisions in favor of the power reserved to the people to permit rather than to preclude the exercise of the power and to promote rather than to prevent or obstruct the object sought to be attained, we will not do so. See Oster, 93 Ohio St.3d at 486, 756 N.E.2d 649.
{¶ 44} Therefore, R.C. 731.29 and 731.30 do not exempt Ordinance No. 05-11 from referendum, in light of the specific charter provision subjecting it to referendum.
Conclusion
{¶ 45} Based on the foregoing, relators have established their entitlement to the requested relief. Ordinance No. 05-11 is subject to referendum, and the city council and its clerk have a clear legal duty to treat it as such. Therefore, we grant a writ of mandamus to compel the Clerk of the South Euclid City Council to determine that relators’ referendum petition is valid and sufficient and to communicate that determination to the city council and to compel the South Euclid Council to either repeal Ordinance No. 05-11 or to submit the ordinance to the city’s electors at the November 8, 2011 election.
Writ granted.
O’Connor, C. J., and Pfeifer, Lundberg Stratton, Lanzinger, Cupp, and McGee Brown, JJ., concur.
O’Donnell, J., dissents.