[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hasselbach v. Sandusky Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-3751.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3751

THE STATE EX REL. HASSELBACH ET AL. *v.* SANDUSKY COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hasselbach v. Sandusky Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-3751.]

*Mandamus—Elections—R.C. 731.30—Rezoning ordinance was not properly enacted as an emergency measure—City council failed to set forth adequate reasons for necessity in passing ordinance as an emergency measure—Writ requiring county board of elections to place referendum petition on November 2019 ballot granted.*

(No. 2019-1191—Submitted September 16, 2019—Decided September 18, 2019.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this expedited election case, relators, Dennis Hasselbach and Marilyn Moore, electors of the city of Fremont ("petitioners"), seek a writ of

mandamus to compel respondent, the Sandusky County Board of Elections, to place a referendum petition concerning a city zoning ordinance on the November 2019 general election ballot. The board excluded the petition from the ballot after finding that the ordinance was properly passed as an emergency measure and therefore is not subject to referendum. Because the ordinance fails to state an emergency under R.C. 731.30, we conclude that the board's decision was contrary to law and grant the writ.

## I. BACKGROUND

### A. The zoning ordinance passes as an emergency measure

{¶ 2} On June 6, 2019, Fremont City Council passed an ordinance that rezoned a parcel from "single-family residential" to "multi-family residential." The parcel is owned by intervening respondent, Fremont Rental, Ltd. Fremont Rental sought the zoning change because it intends to construct apartments on the parcel.

{¶ 3} Petitioners allege that the zoning change was first proposed as a nonemergency measure at a city council meeting in May 2019. A third reading of the proposed ordinance occurred at council's June 6 meeting. *See* R.C. 731.17(A)(2) (requiring proposed ordinances to be "read on three different days" before passage). But at the June 6 meeting, the proposal was modified to include the following language designating it as an emergency measure:

> The immediate operation of the provisions of this ordinance is necessary for the immediate preservation of the public peace, health, safety and welfare of the citizens of the City of Fremont. Said emergency being the immediate undertaking of the project to avoid an increase in project cost.

With this change, the ordinance passed by a four-to-two vote.

**{¶ 4}** Fremont's city council ordinarily has seven members. *See* R.C. 731.01(A). There were only six council members at the June 6 meeting because one member had died on June 3.

### B. Neighboring property owners file a referendum petition, but the board rejects it

**{¶ 5}** On June 28, a committee of Fremont electors (including petitioners) filed a referendum petition to have the zoning ordinance placed on the November ballot for approval or rejection by the voters. On July 19, Fremont Rental and one of its employees filed a protest against the petition with the board. On August 15, after a hearing, the board upheld the protest, excluding the referendum from the ballot, by a three-to-one vote. The board concluded that the ordinance was properly passed as an emergency measure and therefore is not subject to referendum.

### C. Petitioners file this mandamus action

**{¶ 6}** Petitioners filed this mandamus action against the board on August 26. Fremont Rental moved to intervene, and we granted the motion on September 3. Petitioners and Fremont Rental submitted evidence, and the matter is fully briefed.

### D. Neighboring property owners challenge the validity of the ordinance in common pleas court

**{¶ 7}** Meanwhile, on July 23, Hasselbach and others filed a complaint in the Sandusky County Court of Common Pleas seeking declaratory judgment and injunctive relief against the city of Fremont. The plaintiffs in that case allege that the zoning ordinance is "invalid and void" for four reasons. Two of those reasons are similar to petitioners' arguments in this case: that the ordinance was not passed by a two-thirds vote of all the members elected to the legislative authority, as required by R.C. 731.30, and that it did not identify a legitimate emergency. The common-pleas action is essentially stayed by stipulation of the parties until after the November election.

## II. ANALYSIS

### A. Preliminary issues

*1. The jurisdictional-priority rule does not bar petitioners' claim;*

*and petitioners lack an adequate remedy at law*

{¶ 8} Fremont Rental first argues that we lack jurisdiction under the jurisdictional-priority rule, because a similar action challenging the validity of the zoning ordinance is pending in the court of common pleas. Under the jurisdictional-priority rule, "[a]s between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." *State ex rel. Phillips v. Polcar*, 50 Ohio St.2d 279, 364 N.E.2d 33 (1977), syllabus. The rule "exists to promote judicial economy and avoid inconsistent results." *State ex rel. Consortium for Economic & Community Dev. for Hough Ward 7 v. Russo*, 151 Ohio St.3d 129, 2017-Ohio-8133, 86 N.E.3d 327, ¶ 10.

{¶ 9} The jurisdictional-priority rule generally requires "the claims and parties [to] be the same in both cases, so '[i]f the second case is not for the same cause of action, nor between the same parties, the former suit will not prevent the latter.' " *State ex rel. Dunlap v. Sarko*, 135 Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 10, quoting *State ex rel. Judson v. Spahr*, 33 Ohio St.3d 111, 113, 515 N.E.2d 911 (1987). As petitioners point out, the common-pleas action and this action involve different causes of action and different parties. While the plaintiffs in the common-pleas action sued the city of Fremont seeking a declaration that the zoning ordinance is *invalid* because it was not properly enacted, petitioners here sued the board seeking mandamus relief, assuming that the ordinance is *valid* yet subject to referendum.

{¶ 10} Fremont Rental nevertheless contends that an exception to the general rule applies here because, it says, the two cases involve the same issue. To be sure, we have "recognized that the jurisdictional-priority rule can apply even when the

causes of action and relief requested are not exactly the same, as long as the actions present part of the same 'whole issue.' " *Dunlap* at ¶ 11, quoting *State ex rel. Otten v. Henderson*, 129 Ohio St.3d 453, 2011-Ohio-4082, 953 N.E.2d 809, ¶ 29, and *State ex rel. Sellers v. Gerken*, 72 Ohio St.3d 115, 117, 647 N.E.2d 807 (1995). But this case is unlike *Dunlap*, which involved a relator who had stated very similar public-records mandamus actions in multiple courts "against essentially the same parties." *Dunlap* at ¶ 12. In contrast, the two actions filed by Hasselbach seek different relief and involve different theories, different causes of action, and a different defendant/respondent.

{¶ 11} The cases on which *Dunlap* relied do not support Fremont Rental's argument either. *Otten* involved two actions that not only included "the same parties and same causes of action" but also "present[ed] the same issue." *Otten* at ¶ 29. And in *Sellers*, we *declined* to apply the exception to the general rule, because "it [was] not clear * * * that the two suits comprise[d] part of the same 'whole issue.' " *Sellers* at 117. Fremont Rental thus has not shown that the common-pleas action and this action overlap to such a degree that they fit within the exception to the general rule. We therefore reject Fremont Rental's argument that we lack jurisdiction because of the jurisdictional-priority rule.

{¶ 12} Although the parties do not address it, the common-pleas action is relevant to another issue in this case—whether petitioners have an adequate remedy at law. *See State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6 (holding that a relator in a mandamus action must prove the lack of an adequate remedy in the ordinary course of law). We recently held that under certain circumstances, a party may have an adequate remedy at law in an election matter when it first pursues an action in a common pleas court. *State ex rel. Fleming v. Fox*, __ Ohio St.3d __, 2019-Ohio-3555, __ N.E.3d __, ¶ 8.

{¶ 13} But this case is unlike *Fleming*, which involved a special statutory proceeding under R.C. 307.94. That statute does not apply here, and the remedy

Hasselbach is pursuing in the common pleas court differs from the writ petitioners seek from this court. Although the practical goal of both cases may be to stop Fremont Rental's project from moving forward, the object here is to have the ordinance presented to Fremont electors for approval or disapproval. The common-pleas action, in which the Sandusky County Board of Elections is not a party, is not adequate to provide that remedy. Thus, we conclude that petitioners lack an adequate remedy in the ordinary course of the law. *See State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 10.

### 2. Laches does not apply

{¶ 14} Fremont Rental argues that petitioners' claim is barred under the doctrine of laches. We have applied laches in election cases, which require relators to exercise "[e]xtreme diligence and promptness." *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections*, 86 Ohio St.3d 107, 113, 712 N.E.2d 696 (1999). "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).

{¶ 15} Fremont Rental argues that petitioners unreasonably delayed by bringing this action on August 26—11 days after the board's decision. Indeed, this delay could be viewed as unreasonable. *See Paschal v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 141, 142, 656 N.E.2d 1276 (1995) (applying laches based on 9-day delay). But we "generally require a showing of prejudice before * * * apply[ing] laches to bar a consideration of the merits of an election case." *State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 11.

{¶ 16} Regarding prejudice, Fremont Rental argues only that petitioners' delay caused "extended uncertainty respecting the goal of the underlying ordinance

6

and whether there'd be a referendum or not." Fremont Rental fails to show that uncertainty regarding the outcome of pending litigation constitutes material prejudice for purposes of applying laches. And even if the uncertainty of litigation could constitute prejudice, Fremont Rental's claim is illusory: If petitioners had filed this action several days earlier, Fremont Rental likely still would be in the same position. Petitioners' delay did not cause the uncertainty surrounding the zoning ordinance. We therefore reject Fremont Rental's laches argument.

### B. Petitioners' compliance with election laws

{¶ 17} Fremont Rental next argues that we should not reach the merits of petitioners' claim because petitioners failed to comply with R.C. 731.32 and 731.35(A)(3). Fremont Rental invokes the "settled rule * * * that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77–01 v. Lorain Cty. Bd. of Elections,* 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 49. Fremont Rental's arguments lack merit.

*1. Petitioners complied with R.C. 731.32 by filing a certified*
*copy of the ordinance with the city auditor*

{¶ 18} R.C. 731.32 required petitioners, before circulating the referendum petition, to file a certified copy of the ordinance under challenge with the city auditor:

> Whoever * * * files a referendum petition against any ordinance or measure shall, before circulating such petition, file a certified copy of the proposed ordinance or measure with the city auditor or the village clerk.
>
> As used in this section, "certified copy" means a copy containing a written statement attesting that it is a true and exact

reproduction of the original proposed ordinance or measure or of the original ordinance or measure.

We have held that because "R.C. 731.32 does not expressly permit substantial compliance, * * * it requires strict compliance." *State ex rel. Barletta v. Fersch*, 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 17.

**{¶ 19}** At the hearing before the board, the city auditor testified that petitioners filed a certified copy of the ordinance in his office. A copy of the certification, indicating receipt by the city auditor on June 14, was introduced at the hearing. Given that the petition itself was filed on June 28, the evidence shows that petitioners complied with R.C. 731.32 by filing a certified copy of the ordinance with the city auditor before circulating the petition.

**{¶ 20}** But Fremont Rental argues that petitioners did not strictly comply with R.C. 731.32 because the certification itself was insufficient. The certification, which was completed by Fremont's safety-service director, states:

COPY CERTIFICATION BY DOCUMENT CUSTODIAN

I, Kenneth P. Frost, hereby swear (or affirm) that the attached reproduction of Ordinance No. 2019-3961 is a true, correct and complete photocopy of a document in my possession. Under penalty of perjury under the laws of the state of Ohio, I attest to the truthfulness, accuracy, and validity of the forgoing statement.

**{¶ 21}** Fremont Rental contends that this certification was inadequate for four reasons. First, relying on *State ex rel. Lewis v. Rolston*, 115 Ohio St.3d 293, 2007-Ohio-5139, 874 N.E.2d 1200, it says that "the referendum proponents themselves must make the certification required by R.C. 731.32." But Fremont Rental does not explain how such a rule results from the language of R.C. 731.32. And *Lewis* does

not support that proposition either, because *Lewis* involved an *initiative* petition, not a *referendum* petition. *See id.* at ¶ 1. It made sense that the initiative petitioners in *Lewis* were the "more appropriate persons to attest to the accuracy of their proposed ordinance," *id.* at ¶ 19, because they had created it. Fremont Rental gives no reason why the same rule should apply here, when the ordinance was drafted and passed by city council.

**{¶ 22}** Second, Fremont Rental argues that the certification suggests that Kenneth Frost, not the petitioners themselves, filed the ordinance with the city auditor. We reject this argument because the city auditor testified that Hasselbach filed the certified copy of the ordinance.

**{¶ 23}** Third, Fremont Rental complains that the certification did not parrot the language of R.C. 731.32 by attesting that the ordinance "is a true and exact reproduction of the original." We reject this argument because, contrary to what Fremont Rental suggests, R.C. 731.32 does not require the person certifying a copy to quote the statutory language. *See State ex rel. Julnes v. S. Euclid City Council*, 130 Ohio St.3d 6, 2011-Ohio-4485, 955 N.E.2d 363, ¶ 34. In *Julnes*, we concluded that a certification was sufficient under R.C. 731.32 because it attested that a document was an "exact copy" of the original. *Id.* We explained that " 'exact' is synonymous with 'true,' and 'copy' is synonymous with 'reproduction' in this context." *Id.* The certification at issue here is not substantively different from the one in *Julnes*: it certified that "the attached *reproduction* of Ordinance No. 2019-3961 is a *true*, correct and complete photocopy of" the document in the custodian's possession. (Emphasis added.) We therefore reject this argument.

**{¶ 24}** Finally, Fremont Rental argues that the certification was invalid because "no evidence exists that Frost examined the referendum proposal and compared it with the original ordinance for purposes of a proper attestation." This argument lacks merit because R.C. 731.32 requires the certifier to compare the copy of the ordinance to the original ordinance; it does not require the certifier to compare

*the referendum proposal* to the original ordinance. We therefore conclude that petitioners complied with R.C. 731.32.

2. *Noncompliance with R.C. 731.35(A)(3) would not invalidate the petition*

{¶ 25} R.C. 731.35(A)(3) requires the circulator of a petition, "within five days after such petition is filed with the city auditor," to "file an itemized statement, made under penalty of election falsification, showing in detail" the "[f]ull names and addresses of all persons who contributed anything of value to be used in circulating such petitions." There is no dispute that the petition committee did not file a statement under R.C. 731.35. Fremont Rental argues that a statement was required because at least one individual expended money for the referendum effort. The only specific evidence of an expenditure appears to be the $12.50 filing fee paid to the city auditor.

{¶ 26} We need not decide whether a financial-disclosure statement needed to be filed in this instance, because even if one was required, the violation would not invalidate the referendum petition. Under R.C. 731.99(A), failure to file a statement required under R.C. 731.35 results in a fine. *See also* R.C. 731.36(F). No statute specifies that a violation of R.C. 731.35 *invalidates* the underlying petition. *See Gem Dev. Co. v. Clymer*, 120 Ohio App. 189, 191, 201 N.E.2d 721 (10th Dist.1963); *see also State ex rel. Baur v. Medina Cty. Bd. of Elections*, 90 Ohio St.3d 165, 169, 736 N.E.2d 1 (2000).

{¶ 27} Fremont Rental nevertheless argues that we must declare the referendum petition invalid to ensure "mandatory compliance with R.C. 731.35(A)(3)." Because the General Assembly already has specified the consequence of noncompliance, this is ultimately just a request for us to supplant the legislature's authority by creating a new penalty. We decline that invitation and will consider the merits of petitioners' claim.

**C. Review of the board's decision**

**{¶ 28}** To be entitled to a writ of mandamus, petitioners must prove, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *Waters*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, at ¶ 6, 13. As discussed above, we conclude that petitioners lack an adequate remedy at law.

**{¶ 29}** To satisfy the first two elements for mandamus relief, petitioners must show that "the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions" when it refused to place the referendum on the ballot. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9. Because petitioners make no allegation of fraud or corruption, they must show that the board abused its discretion or disregarded the law when it rejected the petition. In examining the board's decision, we "need accord no deference to [the board's] interpretation of state election law." *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 30, fn. 2.

**{¶ 30}** Petitioners first argue that because Fremont City Council, by law, consists of seven members, five votes were needed to pass the ordinance as an emergency measure under R.C. 731.30. This proposition presents the question whether the statutory language—"a two-thirds vote of all the members elected to the legislative authority"—refers to the number of council seats or only to the number of incumbent council members. We need not resolve this issue, however, because we agree with petitioners' second argument: that the ordinance fails to sufficiently set forth "the reasons for such necessity," as required by R.C. 731.30.

**{¶ 31}** R.C. 731.30 provides:

> [E]mergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and *the reasons for such necessity shall be set forth in one section of the ordinance or other measure*.

(Emphasis added.)

{¶ 32} We acknowledge that in assessing compliance with this provision, our review is limited: We may determine whether council gave a reason for passage of the ordinance as an emergency that was "purely conclusory, tautological, or illusory," *State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 14, but we may not determine whether the reason given was a valid one. *State ex rel. Laughlin v. James*, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 24, 27. As we explained in *State ex rel. Fostoria v. King*, "[t]he statutory requirement of stating reasons for declaring the emergency is provided only to satisfy voters that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency." 154 Ohio St. 213, 220-221, 94 N.E.2d 697 (1950).

{¶ 33} We determined that a municipal legislative authority had not complied with R.C. 731.30 in *Webb*, which, like this case, involved a petition for a referendum on a rezoning ordinance. The ordinance in *Webb* stated that passage of the measure as an emergency was necessary "for the proper regulation and use of lands within" the municipality and because the parcel at issue "is more properly classified and consistent with" its new classification. *Webb* at ¶ 2. We recognized that these reasons "could be broadly applied to *any* zoning change." (Emphasis sic.) *Id*. at ¶ 18. And we concluded that the ordinance in *Webb* contained "no viable

reason to exempt the rezoning from the electorate's constitutional right of referendum," because it included "only conclusory statements that fail[ed] to apprise voters of any specific reasons to declare the ordinance to be an emergency." *Id*. at ¶ 20.

{¶ 34} The ordinance at issue here is similarly flawed. It first parrots R.C. 731.30 by referencing "the public peace, health, safety and welfare of the citizens of the City of Fremont," and then states, "Said emergency being the immediate undertaking of the project to avoid an increase in project cost." We have held that " 'merely parrot[ing] a generalized, conclusory phrase' " that could be universally applied to any ordinance does not satisfy R.C. 731.30. *Webb* at ¶ 22, quoting *State ex rel. Luff v. Sommer*, 9th Dist. Summit No. 10169, 1981 WL 4089, *8 (July 30, 1981). Therefore, the question is whether council's reference to increasing projects costs adequately apprised voters of the reason for declaring that the ordinance was an emergency. *See Fostoria* at 220-221.

{¶ 35} We first note that because this case involves plans for a *private* development, it is unlike *State ex rel. Moore v. Abrams*, 62 Ohio St.3d 130, 580 N.E.2d 11 (1991), which involved a *public* construction project. In *Moore*, which involved a city-charter provision similar to R.C. 731.30, we held that a city council's reference to the "lateness of the construction season," *id*. at 133, was "not so vague as to fail to apprise the voters 'that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency,' " *id*., quoting *Fostoria*, 154 Ohio St. at 221, 94 N.E.2d 697. Although there may be a link between the costs of a public-improvement project and a municipality's "public peace, health, or safety," there is no apparent connection between those municipal interests and the project costs of a private developer.

{¶ 36} Thus, on its face, the ordinance "contains no viable reason to exempt the rezoning from the electorate's constitutional right of referendum." *Webb*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, at ¶ 20. Although Fremont

Rental now argues that there were legitimate reasons for the emergency declaration, these "after-the-fact justifications for the passage of the ordinance as an emergency * * * *were not contained in the ordinance*." (Emphasis sic.) *Id*. at ¶ 22.

{¶ 37} If there is, in fact, a connection between Fremont's "public peace, health, or safety" and Fremont Rental's project costs, it was city council's duty under R.C. 731.30 to provide some explanation of that connection, because Fremont electors must have a meaningful opportunity to determine whether "their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency." *Fostoria* at 221. Because the ordinance did not even attempt to connect Fremont Rental's project costs to the city's "public peace, health, or safety," the emergency declaration was "purely conclusory," *Webb* at ¶ 14, and thus insufficient under R.C. 731.30.

{¶ 38} Because the ordinance was not properly enacted as an emergency measure and is subject to referendum, we grant the writ.

Writ granted.

O'CONNOR, C.J., and FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs, with an opinion joined by DEWINE, J.

FISCHER, J., concurs in judgment only.

_____

**KENNEDY, J., concurring.**

{¶ 39} I agree that relators, Dennis Hasselbach and Marilyn Moore, are entitled to a writ of mandamus to compel respondent, the Sandusky County Board of Elections, to place a referendum on a zoning ordinance enacted by the city of Fremont on the November 2019 ballot. I write separately to explain more fully why the Fremont City Council's declaration of an emergency in enacting the ordinance rezoning a single piece of property is insufficient to deprive the city's electorate of the paramount right of referendum.

14

{¶ 40} In this case, intervening respondent, Fremont Rental, sought to have a parcel of property it owns rezoned from "single-family residential" to "multi-family residential" in order to construct an apartment building. The Fremont planning commission recommended granting the zoning change, and the city council read a proposed ordinance to adopt the zoning amendment at two separate meetings. Before the ordinance could be read a third time as required by R.C. 731.17(A)(2), a member of the city council passed away. Three days later, the city council read the proposed ordinance for a third time, and the attorney for Fremont Rental asked that the ordinance be passed as an emergency law in order to prevent a referendum "which then could sink the entire project." The city council added language to the proposed ordinance, declaring that "[t]he immediate operation of the provisions of this ordinance is necessary for the immediate preservation of the public peace, health, safety and welfare of the citizens of the City of Fremont. Said emergency being the immediate undertaking of the project to avoid an increase in project cost." The ordinance passed by a vote of four to two.

{¶ 41} On June 28, a committee of Fremont electors filed a referendum petition to have the zoning ordinance placed on the November ballot for approval or rejection by the voters. The city auditor submitted the petition to the board of elections, which determined that there were sufficient valid signatures, and the auditor then certified the petition to the board of elections as sufficient and valid. Fremont Rental and a city elector filed a protest against the petition with the board of elections, which concluded—after a hearing—that the ordinance had been properly passed as an emergency measure that is not subject to referendum.

{¶ 42} Hasselbach and Moore then filed this action seeking a writ of mandamus to compel the board of elections to place the zoning-ordinance referendum on the November 2019 ballot.

{¶ 43} R.C. 731.29 provides that "[a]ny ordinance or other measure passed by the legislative authority of a municipal corporation shall be subject to the

referendum except as provided by section 731.30 of the Revised Code." As relevant here, R.C. 731.30 states that

> emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure.

{¶ 44} Construing G.C. 4227-3, the predecessor statute to R.C. 731.30, in 1933, we explained that "[t]he question of the emergency character of such measures was to be determined by the legislative body in each instance. The safeguard deemed proper was prescribed in the requirement that the emergency be stated and supported by a two-thirds vote. It is a legislative and not a judicial question." *Holcomb v. State*, 126 Ohio St. 496, 500, 186 N.E. 99 (1933). Since that time, we have indicated that the sole protection of the people's right to referendum is the requirement of "substantially more than a majority vote to enact emergency legislation." *State ex rel. Fostoria v. King*, 154 Ohio St. 213, 220, 94 N.E.2d 697 (1950). And the court in *Fostoria* observed that although there is a "statutory requirement of stating reasons for declaring the emergency," that statement of reasons is "not subject to review by the courts" but rather exists "only to satisfy voters that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency." *Id.* at 220-221. Further, even if there were "no emergency or if the reasons given for such necessity are not valid reasons," this court stated that the sole remedy for the deprivation of the people's

right to referendum is by the voters at a subsequent election of their representatives. *Id*. at 221.

{¶ 45} This court has since adhered to the holding that "the legislative declaration of an emergency—which the General Assembly excepted from its general legislative authorization of municipal referendum in R.C. 731.29—is not reviewable by courts because the two-thirds legislative vote required to enact emergency legislation sufficiently protects the people's right to referendum." *State ex rel. Laughlin v. James*, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 26. *Accord State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 13; *State ex rel. Moore v. Abrams*, 62 Ohio St.3d 130, 132, 580 N.E.2d 11 (1991).

{¶ 46} Nonetheless, we have recognized that R.C. 731.30 does not grant carte blanche authority to exempt legislation from the constitutional and statutory right to refer ordinances to the people at referendum. We have required that an ordinance "set forth legally sufficient reasons for its passage as an emergency ordinance." *Laughlin* at ¶ 29. It is not sufficient to merely restate R.C. 731.30's language that the proposed ordinance is "necessary for the immediate preservation of the public peace, health, or safety." *Id.* at ¶ 32-33. And "including purely conclusory, tautological, or illusory language in the emergency measure fails to meet the R.C. 731.30 requirements for a valid emergency ordinance." *Webb* at ¶ 14. Nor may an ordinance "prevent the electorate from exercising their constitutional right to referendum based on generalized reasons that could apply to *any* zoning change." (Emphasis sic.) *Id*. at ¶ 22.

{¶ 47} Our cases have therefore required legislative authorities to set forth specific reasons supporting the emergency declaration—it is not enough to "state[] that it was an emergency because it was an emergency," *State ex rel. Waldick v. Williams*, 74 Ohio St.3d 192, 195, 658 N.E.2d 241 (1995), citing *Walsh v. Cincinnati City Council*, 54 Ohio App.2d 107, 375 N.E.2d 811 (1st Dist.1977).

There must be "valid reasons for the necessity of declaring that the ordinance was an emergency." *Fostoria*, 154 Ohio St. at 221, 94 N.E.2d 697.

{¶ 48} But nothing in the text of R.C. 731.30 indicates that *any* reason suffices to declare an emergency. Rather, because a city council's authority to declare an emergency is limited to instances when it is "necessary for the immediate preservation of the public peace, health, or safety," R.C. 731.30, it necessarily follows that an emergency law must be supported by reasons for that necessity that relate to the public peace, health, or safety. And if a city council's authority to declare an emergency is constrained by the statute, then that declaration is reviewable by the courts to determine whether the city council has complied with R.C. 731.30.

{¶ 49} A contrary holding would abdicate the judicial responsibility to "say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803), would permit almost any emergency declaration to evade judicial review, and would allow almost any ordinance to avoid the people's judgment at the ballot box. However, it is our duty to determine whether a city council has acted within the statutory authority granted to it by the General Assembly and in accordance with the constitutional right of citizens to referendum. That right, we have explained, is of " 'paramount importance' " in this state. *Laughlin*, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, at ¶ 25, quoting *State ex rel. Ohio Gen. Assembly v. Brunner*, 115 Ohio St.3d 103, 2007-Ohio-4460, 873 N.E.2d 1232, ¶ 8.

{¶ 50} The ordinance at issue in this case would simply rezone a parcel from a single-family-residential to a multifamily-residential property, yet it declares an emergency because "immediate undertaking of the project" is necessary "to avoid an increase in project cost." That reason, on its face, is not sufficient, because increased project costs borne by a developer do not, standing alone, represent an immediate threat to or need to preserve the *public* peace, health, or safety. As Justice Stratton once observed, "The process of land development and transfer are

slow and deliberate events, sometimes taking years. What scenario could possibly be such a dire emergency that it cannot wait an additional thirty days?" *Taylor v. London*, 88 Ohio St.3d 137, 144, 723 N.E.2d 1089 (2000) (Stratton, J., dissenting). But the ordinance here fails to answer that question. A statement that rezoning is needed to protect a single developer from increased project costs does not show any need to preserve the public peace, health, or safety, and it is therefore an insufficient reason to deprive the people of their right of referendum. Otherwise, city zoning law would be exempt from referendum, a result that would be plainly inconsistent with the language of R.C. 730.31.

{¶ 51} Because the ordinance enacted by the Fremont City Council is not supported by reasons showing that emergency action is necessary for the immediate preservation of the public peace, health, or safety, it is subject to referendum. Accordingly, I concur in the majority's opinion and its judgment issuing a writ of mandamus compelling the board of elections to place a referendum on the rezoning ordinance on the November 2019 ballot.

DEWINE, J., concurs in the foregoing opinion.

_____

Albrechta & Coble, Ltd., John A. Coble, Joseph F. Albrechta, and George J. Schrader, for relators.

Timothy Brown, Sandusky County Prosecuting Attorney, and Mark E. Mulligan, Assistant Prosecuting Attorney, for respondent.

Mayle L.L.C., Andrew R. Mayle, and Ronald J. Mayle, for intervening respondent.

_____